DUTCHESS SPECIAL TERM, June, 1848.    *Barculo*, Justice.

## HOYT *vs.* STORY and THE NEW-YORK AND ERIE RAIL-ROAD COMPANY.

In order to constitute an equitable assignment, by a debtor to his creditor, of a sum due to the debtor from a third person, there must not only be an *agreement* to pay the creditor out of the particular fund, but an *appropriation* of the fund, either by giving an order upon it, or by transferring it in such a manner that the holder would be authorized to pay it to the creditor directly, without the further intervention of the debtor.

IN EQUITY.   Motion to dissolve an injunction on bill and answer.   The bill showed that on the 12th of June, 1847, the rail-road company made a contract with one Brown to grade, &c. sections 62, 63, 64 and 65 of said rail-road.   On the 21st of June, Brown made a contract with one Depuy, by which the latter agreed to grade, &c. certain parts of sections 63 and 64; and Brown agreed to pay him at the rate of ninety cents on the dollar of the prices which he should receive from the company; that said Brown abandoned the work and the defendant Story assumed the control of the same, and instructed Depuy to go on and finish the work on which he was engaged, and informed him that he, Story, had taken the work at raised prices, and would pay Depuy ninety per cent of the increased prices.   That monthly estimates were made for the months of August, September and October, and Story paid Depuy at the rate of ninety per cent of the raised prices.   That the company, in order to expedite the work on said four sections, agreed to pay Story $5000 if he would prosecute the work with greater force and diligence; and Story agreed to pay Depuy $1000 extra if he would finish a certain portion of the work by a given time.   The bill further stated that Depuy became entitled to the said $1000, and that Story was indebted to him in the sum of upwards of $7000, and is now indebted in that sum to the plaintiff, who is assignee of Depuy.   The bill further charged that said Story was in embarrassed pecuniary circum-

stances, and prayed an injunction against the company to prevent them from paying, and against Story to prevent him from collecting, the moneys due on his contract from the company, and that an account might be taken of the amount of indebtedness from Story to the plaintiff, and a decree be made for the payment of the same. The answer denied that Story was in embarrassed circumstances; but stated him to be worth $20,000. It also denied most of the allegations in the bill.

*John Graham,* for the defendant Story.

*John J. Wilkin & Samuel J. Wilkin,* for the plaintiff.

BARCULO, J. It will be unnecessary to examine the numerous objections to the injunction which appear upon the answers, and which have been urged with great force by the counsel; as I have come to the conclusion that the plaintiff's bill does not show a case for equitable jurisdiction. The general rule is undisputed, that a court of equity will not aid a creditor to reach the effects of his debtor until the former has established and liquidated his claim in a court of law. It is true that there are exceptions to this rule; but the present case does not fall within any of them. The principle invoked by the plaintiff's counsel is the doctrine of equitable assignments; and upon that point he cites *Burn* v. *Carvelho,* (4 *Mylne & Craig,* 690.) In that case the plaintiffs were merchants in London. Fortunato, a merchant in Liverpool, being under pecuniary obligations to them, and having property in the hands of his agent Rego, at Bahia, *promised and agreed* with the plaintiffs to apply such property to the discharge of his liability to the plaintiffs, and sent directions to Rego for that purpose, but became bankrupt before such instructions could reach Rego. The lord chancellor held that the plaintiffs had a good title in equity to the goods; laying down the rule to be that "an order given by a debtor to his creditor upon a third person having funds of the debtor, to pay the creditor out of such funds, is a binding equitable assignment of so much of the fund." The

equitable lien was created by the *agreement* of the debtor to pay the creditor out of the particular fund. In the case of *Malcolm* v. *Scott*, (3 *Hare*, 39,) the vice chancellor, in commenting on the case of *Burn* v. *Carvelho*, remarks : " I do not conceive that Lord Cottenham meant to decide any thing more in that case than that, when you make out the agreement to give the lien, the form of the transaction is not material."

That the rule depends upon the *agreement* to pay out of the particular fund, is apparent also from the case of *Watson* v. *The Duke of Wellington*, (1 *Russ. & Mylne*, 602.) The master of the rolls there says : " In order to constitute an equitable assignment, there must be an engagement to pay out of the particular fund ;" and he dismissed the bill because he could not find " any engagement of the Marquis of Hastings to pay the debt out of this money." This rule is recognized and acted upon in the case of *Clark* v. *Mauran*, (3 *Paige*, 373,) and in the case of *Bradley* v. *Root*, (5 *Id.* 632.) In the last case Bradley claimed as the assignee of a mail contract from one Stewart, in which Bradley agreed to carry the mail and was " to receive the full benefit of said contract, and be entitled to all moneys due from the postmaster general agreeably to the terms of said contract." After this, Stewart gave the defendant Root an order on the postmaster general, by which he drew a considerable sum of money due on the mail contract. The chancellor, conceding that the order was an equitable assignment to Root, held that Bradley had the prior and superior equity by virtue of the assignment of the contract. In all these cases it will be perceived that there is something more than a mere *agreement to pay out of the particular fund.* There is some *appropriation* of the fund, either by giving an order upon it, or by transferring it in such a manner that the holder would be authorized to pay it to the creditor directly, without the further intervention of the debtor. This I understand to be the true distinction between a mere contract to pay out of certain funds, and an appropriation of the fund which courts of equity will uphold as an equitable assignment.

The case of *Rogers* v. *Hosack*, (18 *Wend.* 319,) is in point.

There was a *covenant* to pay certain debts out of a designated fund, when the same should be received by the debtor; and the court of errors held that it did not give the creditors a specific lien on the fund; but was a mere personal covenant, reversing the decision of the chancellor in 5 *Paige*, 415. Judge Cowen, in his opinion, uses the following emphatic language: "Here is no assignment, no mortgage or pledge; no order, or any other specific appropriation of the French funds, but a mere covenant to pay them over on their being obtained by the covenantor. That such an agreement does not create any lien, either at law or in equity, several point blank cases have been cited on the argument." "Indeed, among the cases cited to show that these articles of agreement may be made operative as an assignment, I have been unable to discover the least countenance for such a construction." (18 *Wend.* 334.) This decision of the court of errors is in strict conformity to the current of authorities; and does not introduce any new principle nor interfere with the settled law in the slightest degree, as seems to be supposed by the chancellor in *Hawley* v. *Ross*, (7 *Paige*, 103,) and in *Richardson* v. *Rust*, (9 *Id.* 243.)

In the case before us, Brown having a contract with the rail-road company, entered into an agreement with Depuy, by which the latter agreed to do certain portions of the work "in the same manner, within the same time and subject to the same conditions, specifications, liabilities and penalties as are contained in and by virtue of a contract" between Brown and the company. Brown agrees to pay Depuy "at the rate of ninety cents on the dollar of the prices which he receives from the" company. Brown abandons the contract, and Story comes into his place under a contract with the company for higher prices; Depuy continues under Story. The plaintiff claims that Depuy was to receive from Story all except ten per cent of the prices which Story received. Story contends that he agreed to continue Depuy at the same prices for which he worked under Brown. The agreement between them was by parol. The point in dispute between them is whether Depuy was to receive at the rate of ninety per cent of Brown's prices, or of Story's

prices. Now it seems to me quite clear that in either event the plaintiff has no equitable lien upon the fund in the hands of the company. Brown *covenanted* to pay at the rate of ninety per cent of the prices he received. Story comes in and agrees, by parol, to pay at the same rate or the same proportion of his increased prices. The case comes clearly within the decision in *Hosack* v. *Rogers.* Here is no *order* upon the fund; there is no assignment, or transfer, or appropriation; the plaintiff has no authority by which he could demand payment of the company, nor which would protect and justify the company in paying him. A reference is made to the price paid by the company, only for the purpose of fixing the amount of compensation, and the time and conditions of payment. There is no discharge of Story's personal liability. On the contrary, the plaintiff charges that Story has made all the payments that have been made, and that he is indebted to the plaintiff in a large amount. I am unable to discover in these facts the least color for the pretence that the plaintiff has an equitable lien upon the fund.

It is contended that Depuy by his labor *created* the fund, and hence an equity arises in his favor. But if this doctrine were correct, it would be necessary to extend the lien a step farther, and give the benefit of it to each of the laborers under Depuy, who *actually* performed the work. This would be extending the doctrine farther probably than even the plaintiff would desire; but no farther than the principle necessarily leads. In the absence of any legislative enactment creating a lien in favor of labor, it is a matter of contract between the laborer and his employer, in which each must rely upon the integrity and responsibility of the other, to a certain degree; and although cases sometimes occur in which great injustice is done to the former, still I am not aware of any principle which will allow this court to interpose in sustaining an equitable lien in a case like the present.

The injuction must be dissolved, with twenty dollars costs of motion.