## CHARLES T. PARKER and others, Appellants, *v.* ARCHIBALD BAXTER and others, Respondents.

*Sale upon a promise to pay the next day — title of vendee — rights of one advancing money on the faith of the borrower's ownership of the property — what gives a lien on the property to such a lender — Reference — notice to terminate, cannot be given after report made.*

The plaintiffs having sold certain corn to the defendants, Baxter & Co., delivered to them the shipping receipts therefor, upon their promise to pay the price thereof, on the next day ; Baxter & Co. procured bills of lading of the corn, by which it was consigned to the Bank of Liverpool, and drew a bill of exchange upon the said bank for £2,600, to the order of Brown, Shiply & Co., of London, directing the amount thereof to be charged as advised. This bill was discounted by the defendants, Brown Brothers & Co., the money being actually advanced upon it. Baxter & Co. also wrote to the bank, inclosing the bill of lading, and stating that the corn had been shipped, and the draft drawn against it.

It was shown that the words "as advised," contained in the draft, referred to the advices given in this letter, and that this had been the course of business between Baxter & Co. and the bank for a long time, the defendants, Brown Brothers, having knowledge of these facts and discounting the draft upon the faith thereof.

Baxter & Co. having failed to pay for the corn, and the plaintiffs having brought this action to recover it, *held*, that the defendants, Brown Brothers & Co., had acquired an equitable title to the corn, to the extent of their advances, and that such title was superior to that of the plaintiffs.

In an action involving conflicting claims to the proceeds of property sold, the referee filed his report in favor of one of the defendants, but failed to decide whether certain of the defendants were entitled to costs. Upon defendants giving notice of a motion before the referee, to decide this question, the plaintiffs served a notice that they elected to terminate the reference, as more than sixty days had elapsed since the original submission. Subsequently, on motion of the defendants at Special Term, an order was made sending the case back to the referee, in order that he might pass upon this question.

On an appeal from this order, *held*, that it was proper, and should be affirmed.

Appeal from a judgment recovered on the report of a referee, and from an order " referring the action back " to the referee, to determine whether costs should be allowed to certain defendants.

The controversy in this action is as to the right to certain moneys that, at the time of its commencement, were in the hands of the defendants, Brown Brothers & Co., accruing as follows :

The plaintiff claimed to be entitled to retake certain corn which they had sold to the defendants, Baxter & Co., on the ground that Baxter & Co. had failed to pay for it as agreed.

The defendants, Brown Bros. & Co., claimed to be the equitable owners thereof by reason of certain advances made by them to Baxter & Co., under the belief that they were the owners of the corn.

One of the vessels on which the corn had been partly laden sailed from New York on the 7th of August, 1875, bound for Liverpool. The other vessel, containing the other part of the corn, yet remained in the port of New York. The plaintiffs replevied the corn laden on this latter vessel, but made only Baxter & Co. their general assignee, and the master of the ship defendants. In the execution of the writ, the sheriff of New York took the corn out of the vessel. The defendants, Brown Bros. & Co., thereupon claimed title to the said corn, and right to the possession thereof, and brought their action to procure the application of the corn to the payment of a bill of exchange drawn against the consignee, which had been purchased and held by them.

Thereupon an agreement between the plaintiffs and Brown Bros. & Co. was made, under which the corn was sold, and the proceeds thereof, being in all $12,955\frac{10}{14}$, were received by Brown. Bros. & Co., subject to the descision in this action, which was, thereupon instituted under the agreement between the plaintiffs and Brown Bros. & Co.

The referee decided, as matter of fact, that the corn had been actually delivered to Baxter & Co. by plaintiffs, and that the purchase was not fraudulent on the part of Baxter & Co., and that if it had been, the plaintiffs had, nevertheless, lost their rights to the proceeds of the corn as against the defendants, Brown Bros. & Co., who alone were entitled to retain them.

In giving his report, the referee made no finding as to whether Baxter & Co. and their assignee should have costs. The defendants thereupon gave notice of a motion, before the referee, to have this question determined by him. The plaintiffs thereupon served a notice that they elected to treat the reference as ended, as more than sixty days had then expired since the original sub-

mission of the cause, and the Browns then withdrew their motion. The defendant Johnson, assignee, thereupon made application to the court to have the cause "referred back to the referee," to have the question as to costs determined by him. The court, by its order of August 23, 1877, so ordered.

The referee thereupon reported in favor of awarding costs to defendant Johnson, assignee, defendants Baxter & Co. declining costs.

*A. P. Whitehead* and *M. W. Divine*, for the appellants.

*Clarkson N. Potter* and *James P Lowrey*, for the respondents.

DANIELS, J.:

The controversy in this action presents the right to the proceeds of the sale of upwards of 16,000 bushels of corn, sold by the plaintiffs to the defendants, Baxter & Co. A contract for the sale of 20,000 bushels of corn was entered into between these parties on the the 22d day of July, 1875. It was to be delivered during the succeeding month of August, at the option of the sellers, and the purchase price was to be then paid in cash. The second day of August the plaintiffs notified Baxter & Co. that they were ready to deliver the corn, and on the fifth of that month Baxter & Co. designated two vessels which were to receive and transport it. The next day the plaintiffs delivered the corn upon those vessels, and received the measurers' and ships' receipts for the same. These receipts entitled them, or the persons to whom they might be transferred by them, to the bills of lading, and for the purpose of disposition, therefore, represented the corn itself. The purchasers sent their clerk for these receipts, but they were not delivered to him because of difficulty in securing payment for the price of property previously sold. In the afternoon of that day the plaintiff, Parker, called at the defendants' place of business with the receipts indorsed in blank, and after receiving from Mr. Baxter the assurance that the price of the corn should certainly be paid on the next day, which was Saturday, and the customary day for settling transactions of that nature, he delivered the receipts so indorsed, together with bills or invoices of the prop-

erty, to the defendant Baxter, for his firm of Baxter & Co. This was what the law denominates a symbolical delivery of the corn, and although the bills for it were made out under printed headings, which contained the statement that the terms of sale were cash on delivery, and that merchandise thereby billed was not to be deemed and taken as delivered, nor the title passed until paid for, without regard to possession, as the terms were not included in the actual contract for the sale, the title passed, irrespective of those terms to Baxter & Co., on the delivery of the receipts. To prevent the vesting of the title in Baxter & Co., there should have been some stipulation or understanding between the parties at the time when the final contract was entered into, providing for that circumstance, but there was none ; for the agreement made provided for an unqualified transfer of the receipts as they had been indorsed, without any restriction whatever concerning the effect that should have on the title to the corn. That was thereby placed in the possession and subject to the disposal of Baxter & Co., solely upon the faith of the promises exacted, and received, that the purchase price should be paid on the following day. The passage of the title was not made conditional on such payment, neither was any allusion made to the terms mentioned at the head of the bills, nor any expectation, or intention expressed that they must be regarded as entering into the contract of sale in any manner whatever, and that omission clearly distinguishes this from the cases in which the title was held not to pass, even in favor of a subsequent *bona fide* vendee. In those cases the stipulation that the title should not pass before payment was made was clearly and explicitly agreed upon, and the courts, by their decision, simply preserved and maintained the validity of that stipulation. Here there was no element of that nature, but the sale and delivery were wholly unqualified.

At the time when the delivery was made Baxter & Co. were deeply involved in debt, and actually and largely insolvent. But no representations of their pecuniary condition were made to induce the sale and delivery of the corn, and no other evidence given from which it could be inferred that they did not, when they procured it, intend to pay for it, as they agreed to do. They did not do it, but their failure was excused by the state of

the market which, on the following day, rendered the free sale of foreign exchange on the shipment of grain an impracticable expedient. This inability deprived them of the power to fulfill the agreement made for the payment of the price of this corn, and resulted, on the same day, in a general assignment for the benefit of their creditors.

Upon this evidence the learned referee did not consider himself justified in concluding that they purchased the corn with the design not to pay for it, and this court cannot properly hold that this view was not the one which the state of the evidence warranted him in adopting. But if it should be considered that the omission to find the existence of this design was erroneous, it would not aid the plaintiffs in their effort to reach the proceeds of the corn, if the learned referee was right in the further conclusion adopted by him, that the other defendants, Brown Brothers, advanced money upon it by discounting Baxter & Co.'s draft. For where title may be obtained by fraud on the sale of personal property, as long as it remains in the vendee, undivested by a rescission of the sale, he may sell or pledge it to a *bona fide* purchaser or pledgee advancing value upon it, who will after that be able to hold it against the original vendor, who was induced to part with it by means of the fraud of the first purchaser. The title, in such a case as that, will pass, and for the time constitute the vendee the owner, and persons dealing *bona fide* with him, while the title remains in that condition, will be protected against the claims of the original owner to repossess himself of the property. (*Western Transportation Co.* v. *Marshall*, 37 Barb., 509; *Lacker* v. *Rhoades*, 45 id., 499; *Western Trans. Co.* v. *Marshall*, 4 Abb. Ct. App. Dec's, 575; *Barnard* v. *Campbell*, 55 N. Y., 456; *S. C.*, 58 id., 73.) For that purpose it is sufficient that advances may be made or some other consideration parted with upon the faith of the title of the person in the actual possession of the property (id., 79), and the same result would follow even though the vendors may have retained a mere lien on the corn for the payment of the purchase price on the following day. (*Ballard* v. *Burgett*, 47 Barb., 646, 648–650; *Rawls* v. *Deshler*, 3 Keyes, 572.) But whether there was such a lien after the unqualified delivery which was made of this corn may very well be regarded as at least involved in doubt.

(*Hankins* v. *Baker*, 46 N. Y., 666, 671.) In no view, however, did any such interest in, or control over, the corn remain in the plaintiffs as would enable them to recover it, or its proceeds, where that would disturb or divest the security of a pledgee in good faith and for value. And whether Brown Brothers, who are the other claimants of the proceeds of the corn, acquired such a security upon it by what was done between themselves and Baxter & Co., is the remaining subject to be considered in the disposition of this appeal.

The vendees, Baxter & Co., on the authority of the receipts endorsed and delivered to them by the plaintiffs, on the seventh of August, procured bills of lading for the corn from the masters of the vessels having it on board, by the terms of which it was consigned to the Bank of Liverpool, and they drew their bill of exchange on the bank for £2,600 sterling, to the order of Brown, Shipley & Co., of London, directing the amount to be charged " as advised." This bill was discounted by the defendants, Brown Brothers, for the benefit of the drawers, and the money, exceeding the amount of the proceeds now in controversy, was actually advanced upon it. In order to create the advance a charge on the corn and its proceeds, further evidence was given, showing that Baxter & Co., on the seventh of August, wrote the Bank of Liverpool, the consignee, stating that the corn had been shipped to it; that the draft had been drawn against the shipment, and the bill of lading was also forwarded with the letter. It was conceded that the phrase, as advised, contained in the draft referred to the advices given by this letter. And it further appeared, that this had been the course of business, for a long time previous to this transaction, between Baxter & Co. and the bank, and that information of it had been communicated to the defendants, Brown Brothers, whom, the referee found, discounted this draft, in view and on the faith of that understanding. The drawing and discounting of the draft alone would not give the defendants discounting it, as was the fact, on account of their London correspondents, any lien or charge upon the corn, or its proceeds. For the bill standing by itself would not affect the fund expected to be created by the sale of the property (*Chapman* v. *White*, 2 Seld., 412). But the letter which was connected with the bill, by the refer-

ence made in it, extended the nature of this transaction beyond that of the mere discounting of a bill of exchange ; the defendants receiving and paying their money, on the faith of it, were justified in concluding that property had been shipped to the consignee, out of the proceeds of which the bank had been required and was to pay the draft. And the referee has found, from the evidence, that the discount was made with knowledge of, and in reliance upon, that arrangement. Direct evidence of these facts was not given, but circumstances were proved from which that was reasonably concluded, and they were sufficient to establish the fact that when the bill was discounted it was done on the understanding that its payment had been provided for from the proceeds of the property sent forward, and which had formed the subject of advices, to that effect, sent to the consignee and drawee of the bill. The letter and the bill, and the knowledge of the course of business, so far qualified the nature of the direction and request made in the bill, as substantially to render it an order on the bank for a corresponding amount of the proceeds of the corn, and which, by the agreement with the consignee, was precisely that percentage for which the shippers were entitled to draw. That created a charge, or lien, upon the corn and its proceeds in favor of the parties discounting the bill under these circumstances. It was an equitable assignment which the law requires to be sustained, in favor of the parties advancing their money on the faith of the arrangement, against the right now asserted by the plaintiffs. To create such an assignment the law requires only an engagement to pay out of the particular fund. (*Burn* v. *Carvalho*, 4 Milne & Craig, 690; 18 Eng. Chy., 690.) It was more than a simple direction, by the shipper to the consignee, to apply the property to the payment of the bill, for the bill itself was negotiated and discounted on the distinct understanding that the proceeds of the corn should be applied to its payment, and the nature of the transaction was such that the bank was in no other manner obligated or expected to pay or provide for the bill. The case, in this respect, was substantially a repetition of *Frith* v. *Forbes* (4 De Gex, Fisher & Jones, 65; Eng. Equity, 409), where it was held that the proceeds of the property, against which the drafts were drawn, had become hypothecated for their payment.

This authority has been since considered to have carried the principle defining an equitable assignment, as far as it can, with propriety, be extended. But its authority has not been restricted, or abridged, while it has been confined within the limits indicated by the circumstances there shown. In the following case of *Robey* v. *Ollier* (27 Law Times, 362), it was stated, in the opinion of the master of the rolls, that, "in ordinary cases, where a shipper consigns a cargo to his agents, he may impose on the consignees the terms, that they shall not accept the consignment without, also, accepting the bills drawn against it, and he may require the cargo, or the proceeds, to be applied to meet those bills." But that case, at the same time, was held to be distinguishable from the preceding authority, because of the circumstance that the drawer of the bill was only one joint owner of the property shipped, and for that reason he could not charge it to the prejudice of the other parties, who were entitled to indemnity first out of its proceeds. The case of *Entwistle* (3 Law Reports [Chanc. Div.], 478), was, also, distinguished on another ground, not existing in this case. It was a controversy between the vendor and vendee, in no respect entrenching on the rule, which, according to *Frith* v. *Forbes* (*supra*), should be held to govern a transaction of this description. And *Morton* v. *Naylor* (1 Hill, 583); *Hoyt* v. *Story* (3 Barb., 262); *Marine and Fire Ins. Co.* v. *Jauncey* (1 id., 486), and *Lowery* v. *Steward* (25 N. Y., 239), sanction the same result.

It can hardly be' necessary to add, that the rights of the parties were not changed by the consignments being broken up through the interposition and seizure, by the plaintiffs, of a portion of the corn. For as long as that became previously charged with superior equities, in favor of the defendants, who made the advances on the faith of its security, the plaintiffs did not possess the legal authority over the property to divest the right which had been created in their favor. The charge made, necessarily, affected the property itself. For it entitled the creditors to insist upon its being carried forward to, and sold by, the consignees, so that they might be reimbursed, through the arrangement for its disposition, which had previously been made. The rights of the creditors had become paramount to those of the plaintiffs by means

of the power of disposition, which the latter had given to their vendees, and after that no act of either could defeat the validity of the security the creditors held for the restoration of their advances. The judgment was warranted by the evidence, and it should be affirmed.

The case was, on motion, sent back to the referee to determine the right to costs claimed by other defendants. The report on the issues, fully determining them in all other respects, was completed within the time permitted for that purpose. For that reason the power to terminate the reference, by notice under the authority of section 1019, of the Code, did not exist. It is only where there has been a failure to deliver the report, within the prescribed time, that the notice can be made effectual, and as there was no such failure here, the notice given was inoperative. The order sending the case to the referee again, for this further determination, seems to have been authorized, and it should accordingly be, in like manner, affirmed.

BRADY, P. J., and INGALLS, J., concurred.

Judgment and order affirmed.