## FROST v. CRAIG.

*(City Court of New York, Special Term.* December 30, 1889.)

1. ASSIGNMENT—CHOSE IN ACTION—DELIVERY.

An assignment to an estate by the executor, who is indebted to it, of an endowment policy belonging to him individually, is not an effective transfer, where he

merely makes an indorsement thereon, which he may change at will, and deposits it with the papers of the estate, but does no overt act which places it beyond his power.

2. SAME—RIGHTS OF ASSIGNOR'S CREDITORS.

Nor is such an assignment made effective, as against a judgment creditor of the executor who has begun supplementary proceedings to reach the policy, by overt acts of the executor after commencement of such proceedings.

James M. Frost recovered judgment against Daniel D. Craig. This is an application, in supplementary proceedings, to compel defendant to deliver over an endowment policy payable to himself. Defendant claims that he has assigned the policy to the estate of one Baird, of which he was executor, and to which he was indebted, and that he is not able to make such delivery. It appears that the assignment was made by defendant's indorsing the transfer on the policy, and depositing it in a box with the other papers of the estate in his possession. After the commencement of these proceedings, defendant resigned as executor of Baird's estate, and delivered the papers of the estate, including the policy in question, to Albert I. Sire, his attorney, who, under defendant's instructions, delivered them to one Youngblood, to be delivered by him to the attorney of defendant's successor.

S. H. Little, for plaintiff. Albert I. Sire, for defendant.

McADAM, C. J. It is conceded that the policy, as a chose in action, was capable of assignment by parol, if accompanied by a proper delivery, (Leinkauf v. Calman, 110 N. Y. 50, 17 N. E. Rep. 389; Cleaner Co. v. Smith, 110 N. Y. 88, 17 N. E. Rep. 671;) and that an individual, who is also executor of an estate to which he is indebted, has the right to assign to himself, as executor, his individual property, in order to secure or pay his indebtedness to said estate, (Scranton v. Bank, 33 Barb. 527, affirmed 24 N. Y. 424.) The contention is that, in order to make the transfer effective, the assignor must make such an appropriation of the thing assigned as places it beyond his power to recall the transfer. In other words, the transfer cannot exist in intention only, but must be evidenced by acts open and visible; such as placing the transfer on record, having it noted on the books of the company, if it be a policy, or delivering it to a co-executor, if there be one. This claim finds support in the reasoning of the cases cited, and has direct authority in Schreyer v. Holborrow, 26 Hun, 469. The term "appropriation," as here used, has a definite meaning. Thus, to constitute an equitable assignment of a particular fund in payment of a debt, there must be some appropriation of the fund, either by giving an order upon it, or by transferring it in such a manner that the holder would be authorized to pay it to the creditor directly, without the intervention of the debtor. This is the distinction between a mere contract to pay out of certain funds and an appropriation which courts of equity will uphold as an equitable assignment. Hoyt v. Story, 3 Barb. 262. There was clearly no such appropriation by the debtor at the time this proceeding was instituted. The memorandum the defendant claims to have deposited in the box with the policy and other securities, in February, 1889, was of a "protean" character, liable to any change in form or appearance the defendant saw fit to make. No one knew of it but himself. The insurance company could not act upon it, would have paid no money on it, and, if the defendant had died, the policy would have been an asset in the hands of his legal representatives. Young v. Young, 80 N. Y. 422. Such a memorandum does not rise to the dignity of an irrevocable legal or equitable assignment of the policy, so as to vest title in another. The time when the box was delivered to Sire, and to Youngblood, and, finally, to the defendant's successor, as executor, becomes important to enable the court to determine when the defendant lost control of the policy, and whether it was not really in his possession, actual or constructive, when the proceeding was commenced. The examination of the defendant shows two important facts: First, that he never used any

part of the Baird estate to pay his own debts, and that he owed it nothing; *second*, that he had not, at that time, made any formal transfer or delivery of the policy to it, or to any one for it. This shows that the written transfer now upon the policy must have been antedated with a motive. It is clear from the examination that the defendant controlled the policy at the time the proceeding was commenced; that he had made no such appropriation of it to the estate as would effectuate a legal transfer thereof, under the cases cited. What he did after the proceeding was commenced cannot excuse him, as these were acts of contempt to the process of the court which cannot be received as justifying any disposition of the policy in fraud of the law. The defendant cannot urge a present incapacity to deliver, caused by his own misconduct. There was no disputed question of title at the time of examination; no legal transfer or assignment had been made or delivered which put the title in conflict, or even in fault. What has occurred since was clearly an effort to prefer the successor in office of the Baird estate to the plaintiff. The defendant had a perfect right to do this, if he had done it before the plaintiff's lien on the policy as a judgment creditor had attached by force of these proceedings; but he had no power to do it afterwards for the mere purpose of defeating the proceeding, and rendering the further action of the court nugatory. The motion for reargument must therefore be denied, and the order made by Judge EHRLICH directing the delivery over of the policy allowed to stand. No costs.

### ON APPLICATION FOR STAY PENDING APPEAL.

(January 6, 1890.)

McADAM, C. J. The supplementary proceeding instituted by warrant was in the nature of an equitable proceeding *in rem* to reach the policy of insurance the defendant refused to deliver over; and no injunction was needed, so far as the defendant was to be affected by the proceeding. The rule is that, "during the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute so as to affect the rights of his opponents." This brief proposition in reality contains the entire doctrine. 2 Pom. Eq. Jur. § 633. An interest acquired in the subject-matter of a suit pending is so far considered a nullity that it cannot avail against the plaintiff's title. *Murray* v. *Lylburn*, 2 Johns. Ch. 445. The reason of the rule is that, if a transfer of interest pending a suit were allowed to affect the proceedings, there would be no end to the litigation; for, as soon as a new party was brought in, he might transfer to another, and render it necessary to bring that other before the court, so that a suit might be interminable. For these reasons it must be apparent that an appeal can do the defendants but little good, as the transfer of the policy pending the proceeding is unavailing to the defendant. If he will procure a cancellation of the illegal transfer, and deposit the policy in court within five days, according to section 1328 of the Code, or within that time gives a written undertaking in $300, pursuant to section 1329 thereof, a stay pending the appeal will be granted; otherwise, the application for a stay will be denied, with $10 costs.