Argued 30 January; decided 26 March; rehearing denied 5 May, 1900.

## COMMERCIAL NATIONAL BANK *v.* PORTLAND.

[54 Pac. 814, 60 Pac. 563.]

APPEAL—SERVING NOTICE ON ADVERSE PARTIES.

1. An appeal will not be dismissed because two of the defendants who suffered a decree to be entered against them by default joined with the other defendants in the notice of appeal, where their interests are adverse to those of the plaintiff, but are not adverse to the interests of their codefendants, and they will not be injured by a reversal of the decree.

VALIDITY OF EQUITABLE ASSIGNMENT OF FUND.*

2. An order from a contractor addressed to a city recorder, directing him to deliver to a certain company, from time to time, as certain street work should be accepted, warrants to be drawn by the city on the fund provided for that improvement, equal in amount to the value of materials to be furnished by said company and used in such work, is not an equitable assignment of the fund referred to or the contractor's claim thereon, for such order does not contain words of transfer, nor does it purport to assign any interest in the fund due, or that may become due, from such city to such contractor, on account of such improvement, nor is it directed to the debtor or custodian of the fund, nor is it an unconditional direction as to the disposal of the warrants: *McDaniel* v. *Maxwell*, 22 Or. 202, distinguished.

## From Multnomah :  JOHN B. CLELAND, Judge.

---

*NOTE.—When and to what extent an assignment of part of a fund or demand is enforceable is reviewed in the following . annotated cases: *Harris County* v. *Campbell*, 2 Am. St. Rep. 472;  *McDaniel* v. *Maxwell*, 28 Am. St. Rep. 740; *Avery* v. *Popper*, 71 Am. St. Rep. 849;  *Warren* v. *First Nat. Bank*, 25 L. R. A. 746.
                                                                                         REPORTER.

37 OR.—3.

Decided 24 October, 1898.

ON MOTION TO DISMISS APPEAL.

*Mr. Harrison G. Platt*, for the motion.

*Mr. Ralph R. Duniway, contra.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

1.  This is a motion to dismiss the appeal.   It appears that Terry & Dill, two of the defendants, joined with other defendants in the notice thereof, and it is now contended that, having suffered the decree to be taken against them for want of an answer, they cannot prosecute an appeal therefrom, and that, such being the case, it ought to be dismissed as to them.   Nevertheless, it is further contended that they are necessary parties to the determination of the cause, without the presence of whom this court is powerless to proceed, and, therefore, that the appeal should be dismissed as to all parties :  in other words, that because Terry & Dill are here as appellants, and not as respondents, the court should refuse to take cognizance of the cause.   The reasoning is refined and quite technical, but it overlooks the pivotal conditions attending the appeal.   Several defendants were united as coparties to the suit, among whom were F. E. Beach & Company, and Terry & Dill.   The plaintiff was an adversary party from the inception of the proceeding, and by the adjudication, as shown by the decree, F. E. Beach & Company became also an adversary party to the other coparties defendant.   The statute requires that the party appealing shall serve the adverse party, and this is sufficient to vest the appellate court with jurisdiction in the premises.   We are not aware of any holding that it is necessary to serve a coparty with notice of the appeal where he is willing to join therein as appellant.   Terry

& Dill may have lost their right of appeal by their default, but that fact, and the further fact that they are not adversary parties to the City of Portland and other coparties defendant, while they might be otherwise interested in the decree appealed from, ought not to deprive the City of Portland and other defendants of their right of appeal. If such was the law, all parties to the proceeding, except perhaps F. E. Beach & Company, would be without the right of appeal, simply because Terry & Dill have suffered default.

The complaint shows that the defendant Dill was the original contractor for the improvement of Umatilla Avenue in the City of Sellwood, later incorporated with the City of Portland; that Terry & Dill were partners, and that plaintiff's assignor furnished them a large amount of lumber and materials with which to make such improvement, for which they became largely indebted; that to secure such indebtedness they gave plaintiff's assignor an order upon the City of Sellwood for the delivery of warrants issued upon the fund provided for such improvement, and it is claimed that plaintiff thereby acquired an equitable assignment of a sufficient amount of such fund to satisfy its demand. A part of plaintiff's claim had been paid by warrants drawn by the city, and it prays a decree against the city and Terry & Dill for the balance due. The decree went against the city, but not against Terry & Dill, and yet they have no decree of dismissal, or for costs in their favor. That the plaintiff is an adverse party to the city is plain. Terry & Dill were adverse parties to the plaintiff from the inception of the suit, and coparties with the defendant the City of Portland, and, unless the decree changes the relationship, they are still adverse to the one and coparties with the other. But Terry & Dill have no judgment or decree in their favor and against

the City of Portland, and their condition could not be changed to their detriment by a modification or reversal of the decree at the instance of the city, and hence are not made adversary parties to the city by the decree. As to what might be the ultimate result of the litigation touching their interest, the court is not permitted to speculate. It is sufficient to know that a reversal or modification of the decree cannot affect them injuriously : *Alliance Trust Co.* v. *O'Brien*, 32 Or. 333 (50 Pac. 801). Terry & Dill were properly joined as appellants, and the motion to dismiss will therefore be overruled.

MOTION OVERRULED.

Decided 26 March, 1900.

ON THE MERITS.

In December, 1891, the City of Sellwood entered into a contract with one W. F. Dill for the improvement of Umatilla Avenue, a street in such city. In carrying out his contract, Dill purchased from the Columbia River Lumber & Fuel Company, and used in the work, lumber to the value of $3,680.83, under a verbal agreement that he would give it orders for warrants on the fund for the improvement of the street as the work should be accepted. After a considerable portion of the lumber had been delivered, and in pursuance of such agreement, Dill gave the company the following order :

"PORTLAND, Oregon, February 23, 1892.

*To J. D. Chapman, City Recorder of the City of Sellwood :*
You will please deliver to D. J. Moore, Secretary of the Columbia River Lumber & Fuel Company, city warrants on the fund for the improvement of Umatilla Avenue in said City of Sellwood, in the State of Oregon, from time to time, as work on said avenue shall be accepted, and warrants ordered drawn, equal in amount to the value of the lumber furnished by said Columbia River Lumber

& Fuel Company, and used in making said improvements, now under way, to be evidenced by bills presented by said company and approved by me.

W. F. DILL.''

This order was immediately filed with the city recorder, and has ever since remained in the custody of the City of Sellwood and its successor, the City of Portland.   On May 26, 1892, Dill approved a bill for lumber amounting to $1,537.73, and a warrant for that amount was issued by the City of Sellwood to the fuel company, but he refused to audit or approve any other bills for the company, and on the twenty-fifth of July, 1892, notified the city council that, ''on account of nonfulfillment of contract I had with the C. R. L. & F. Co., I revoke all orders I have given them for warrants.'' Thereafter warrants were issued by the city for the balance due Dill on his contract, and delivered to him and his assignees, and the fund collected for such improvement was thereby exhausted.   The fuel company subsequently commenced this suit against the City of Sellwood and others to recover the balance due for lumber furnished to Dill, on the theory that the order of February 23 operated as an equitable assignment of a portion of the fund for the improvement of the street sufficient to pay for the lumber so furnished.   Thereafter the Commercial National Bank was regularly substituted as plaintiff, and the City of Portland, the successor of the City of Sellwood, as defendant, and, a decree being rendered for the bank, the city appeals.   REVERSED.

For appellant there was a brief over the names of *Joel M. Long* and *Ralph R. Duniway*, with an oral argument by *Mr. Long*.

For respondent there was a brief over the name of *Platt & Platt*, with an oral argument by *Mr. Harrison Gray Platt*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

2.   The only question for our decision is whether the order of February 23 amounts to an equitable assignment. At law, a part only of an entire demand cannot be assigned, so as to enable the assignee to bring an action upon it, without the consent of the debtor ; but equity recognizes that in such case the assignee obtains by the assignment an interest in the property or fund, and permits such interest to be enforced by suit :   *McDaniel* v. *Maxwell*, 21 Or. 202 (28 Am. St. Rep. 740, 27 Pac. 952). But the proof required of an assignment or transfer is the same at law as in equity.   In either case there must be such a transfer or appropriation of the fund, or some definite part thereof, as to divest the assignor of any interest in or control over it, and to confer a complete and present right on the assignee.   Mr. Pomeroy says that "there must be a specific fund, sum of money, or debt actually existing or to become so *in futuro*, upon which the assignment may operate ;  and the agreement, direction for payment, or order must be, in effect, an assignment of the fund, or of some definite portion of it :"   3 Pomeroy, Eq. Jur. § 1280.   No particular form of words is necessary.   Anything amounting to a present transfer of the fund, or a part thereof, for value, is a valid assignment in equity.   If the transaction is, in effect, a sale, vesting a present interest in the assignee, it is sufficient, but a mere agreement or promise to be executed thereafter is not.   "In order to constitute an equitable assignment," says the syllabus of *Hoyt* v. *Story*, 3 Barb. 262, "by a debtor to his creditor of a sum due to the debtor from a third person, there must not only be an agreement to pay the creditor out of the particular fund, but an appropriation of the fund, either by giving an order upon

it or by transferring it in such a manner that the holder
would be authorized to pay it to the creditor directly,
without the further intervention of the debtor:'' And
Mr. Justice SWAYNE, in *Christmas* v. *Russell*, 81 U. S. (14
Wall.) 69, 84, says : ''An agreement to pay out of a par-
ticular fund, however clear in its terms, is not an equita-
ble assignment. A covenant in the most solemn form has
no greater effect. The phraseology employed is not ma-
terial, provided the intent to transfer is manifested. Such
an intent and its execution are indispensable. The as-
signor must not retain any control over the fund,—any
authority to collect, or any power of revocation. If he do,
it is fatal to the claim of the assignee. The transfer must
be of such a character that the fund holder can safely pay,
and is compellable to do so, though forbidden by the as-
signor. Where the transfer is of the character described,
the fund holder is bound from the time of notice.'' See,
also, *Clayton* v. *Fawcett's Adm'rs*, 2 Leigh, 19 ; *Christmas'*
*Adm'r* v. *Griswold*, 8 Ohio St. 558 ; *Kimball* v. *Donald*, 20
Mo. 578 (64 Am. Dec. 209); *Ford* v. *Garner*, 15 Ind. 298 ;
3 Pomeroy, Eq. Jur. § 1280, *et seq.*

Applying these rules to the order under consideration,
we are forced to the conclusion that it did not operate as
an equitable assignment. It does not contain words of
transfer, or purport to assign to the fuel company any
interest in the amount due or to become due from the
city to Dill, nor is it directed to the debtor or custodian
of the fund. It is addressed to the city recorder, and is
simply an order to him to deliver to the secretary of the
fuel company from time to time, as work on the avenue
shall be accepted, warrants thereafter to be drawn by
the City of Sellwood, presumably in favor of Dill, on a
certain fund, equal in amount to the value of the lumber
furnished by the fuel company, and used in making such
improvement. But, waiving this point, and assuming

that in this respect the order is sufficient to constitute an equitable assignment, the fatal objection remains that it did not vest in the fuel company a present right to the warrants, or authorize the city recorder to deliver them without the further approval of Dill. It is only upon the presentation of bills for lumber, approved by Dill, that the city recorder is authorized, under this order, to deliver warrants to the fuel company. The contract was not complete. Something remained to be done in the future by Dill before the right of the company to the warrants should become absolute. The city could not safely deliver to the fuel company, nor be compelled to deliver to it, any warrants, until its bills had been approved by Dill. The words "evidenced by bills approved by me" limited the authority of the city recorder to deliver warrants to the fuel company. It was only upon a certain condition that he was authorized to do so. Indeed, this interpretation seems to be in accordance with the actual intention of the parties. The evidence shows that at the time it was given the secretary of the fuel company desired an order on the recorder to deliver warrants to his company without any further act on the part of Dill, but Dill refused to give such an order, and the company accepted the present one upon the advice of the city attorney "that it did not make any difference what trouble Mr. Dill" and the company got "into over the bills ; that, after filing this order with the recorder of Sellwood, he would hold these warrants in his possession until" they "had come to an agreement." It follows that the decree of the court below must be reversed, and it is so ordered.                REVERSED.