## STOCK GROWERS AND RANCHERS BANK *v.* MILISICH

No. 2607

February 5, 1925.                    233 Pac. 41.

1. Fraudulent Conveyances—Though Debtor Is Nonresident, without Property in State, Plaintiff, in Ancillary Suit Not Having Reduced Claim to Judgment, Must Have Lien on or Interest in Notes Fraudulently Assigned.

Though the debtor is a nonresident and has no property in the state, a suit, ancillary to an action at law, to set aside as fraudulent an assignment of notes, is not authorized without reduction of claim to judgment, unless plaintiff has a lien on or interest in the notes.

2. Fraudulent Conveyances—Complaint, by Reason of Allegation being Conclusion of Law, Held Not to Show Lien by Attachment.

Complaint in suit, ancillary to an action at law, to set aside assignment of notes and mortgages as fraudulent, *held*, by reason of allegation being conclusion of law, not to show the acquisition of a lien by attachment, so as to authorize the suit, where claim had not been reduced to judgment.

3. Fraudulent Conveyances—Liens—Stipulation in Ancillary Suit Held Not to Establish Equitable Lien on Notes Fraudulently Assigned.

Stipulation in suit, ancillary to action at law, to set aside assignment of notes and mortgage security as fraudulent, that they should be held till termination of the litigation in the safety box where they were, did not establish an equitable lien, giving the court jurisdiction to grant the relief.

4. Assignments—Mere Promise to Pay Out of Fund Not Equitable Assignment.

Mere promise of M., whereby he induced plaintiff to make him a loan, that he would repay plaintiff out of moneys due M. on notes of O., did not constitute an equitable assignment

of an interest in the notes debt; but an appropriation, actual or constructive, of the O. debt to the payment of plaintiff by M., on which O. could safely, under any circumstances, pay plaintiff, was necessary.

5. FRAUDULENT CONVEYANCES—COMPLAINT TO SET ASIDE FRAUDU-
LENT CONVEYANCES HELD NOT TO AUTHORIZE JUDGMENT FOR
DEBT.

Even if under Const. art. 6, sec. 14, and 2 Rev. Laws, sec. 4943, providing for but one form of civil action, and for law and equity being administered in the same action, there should not be a separate action for debt and another to set aside fraudulent conveyance, judgment for debt is not authorized by complaint, which, nowhere, even inferentially, seeks such a judgment, but is aimed only at avoiding the conveyance.

6. APPEAL AND ERROR—PROVISION FOR GIVING OPPORTUNITY TO BE
HEARD BEFORE DECIDING POINT, NOT RAISED BY OPENING BRIEFS,
COMPLIED WITH BY ORDERING REARGUMENT.

Provision of Stats. 1923, c. 97, sec. 4, for supreme court not deciding case on point not raised in opening or answering briefs, without first giving parties opportunity to be heard on the point, held complied with by submitting the question for reargument.

7. APPEAL AND ERROR—NOT STRICTLY ACCURATE TO SAY POINT WAS
NOT MADE IN OPENING BRIEF.

In view of gradual evolving by answering and supplemental briefs, of point made in opening brief, held that it was not strictly accurate to say that point was not made in opening brief, within Stats. 1923, c. 97, sec. 4, inhibiting supreme court from deciding case on point not in opening or answering briefs, without first giving parties opportunity to be heard on the point.

8. APPEAL AND ERROR—SUFFICIENCY OF COMPLAINT TO GIVE JURIS-
DICTION MAY BE RAISED ANY TIME.

Question of sufficiency of the complaint, going to the jurisdiction of the court, may be raised for the first time on appeal.

---

See (1, 2, 3, 5) 27 C. J. 573, p. 723, n. 25; sec. 585, p. 731, n. 91; sec. 590, p. 733, n. 10; sec. 657, p. 765, n. 98, 2; sec. 809, p. 850, n. 46; 37 C. J. sec. 20, p. 317, n. 82; sec. 21, p. 318, n. 92; (4) 5 C. J. sec. 78, p. 909, n. 19; sec. 80, p. 915, n. 35; p. 915, n. 38; 5 C. J. sec. 78, p. 909, n. 19; sec. 80, p. 913, n. 35; p. 915, n. 38; (6, 7, 8) 3 C. J. sec. 651, p. 755, n. 5; sec. 708, p. 786, n. 76; sec. 1598, p. 1434, n. 32; 4 C. J. sec. 2469, p. 618, n. 41 (new).

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Suit by the Stock Growers and Ranchers Bank of Reno against Steve B. Milisich and wife. From decree for plaintiff and order denying new trial, defendants appeal. **Reversed.** (SANDERS, J., dissenting.)

*Brown & Belford, Mack & Green,* and *Dodge & Barry,* for Appellants:

Complaint does not state cause of action because:

1. It does not show husband was indebted to plaintiff or any one at time of assignment to wife. Gift at such time is valid and becomes separate property of wife. 21 Cyc. 1665; Bailey v. Littell, 24 Nev. 294; Gen. Stats. sec. 499. Allegation that claim is obligation of community is conclusion of law and does not aid pleading. 31 Cyc. 49. Husband's right to control community does not give him right to create debts chargeable to wife's separate estate. 21 Cyc. 1677.

2. It does not show husband was insolvent at time he made assignment to wife. Albertoli v. Branham, 22 Pac. 404; Tainter v. Broderkick Co., 171 Pac. 679.

3. It does not allege plaintiff's claim had been reduced to judgment, which is necessary in creditor's bill in equity. 15 C. J. 1380; Tennent v. Battey, 18 Kan. 324.

If complaint states no cause of action no evidence under it can be relevant or competent.

Even voluntary conveyance by husband to wife is valid against subsequent creditors unless made with intent to defraud them. Horbach v. Hill, 112 U. S. 114, cited in Schreyer v. Scott, 134 U. S. 405.

Conveyance to wife is not presumptively fraudulent. Vansickle v. Wells, Fargo & Co., C. C. Dist. Nevada, 105 Fed. 16. If conveyance was not fraudulent in its inception it will not be made so by subsequent acts. Idem. To vitiate transfer grantee also must have knowledge of fraudulent intent. Prewit v. Wilson, 103 U. S. 22.

Plaintiff who attacks conveyance as in fraud of his rights must show fraudulent intent of vendor. Burden then shifts to purchaser to show valuable consideration. Burden again shifts, and plaintiff must show vendee's knowledge of grantor's fraudulent intent. Hart v. Church, 58 Pac. 296.

Statement by husband long after assignment and without presence of wife are not binding on her. Title of grantee cannot be impeached by statement of grantor after transfer that conveyance was fraudulent. Ross v.

Wellman, 36 Pac. 402; Winchester etc. Co. v. Creary, 116 U. S. 161.

Husband's gifts to wife while he is solvent are not subject to criticism. Jones v. Clifton, 101 U. S. 225.

*Cooke, French & Stoddard,* for Respondent:

Wife's separate answer tenders very issue, of the lack of which appellants complain. Failure of complaint to state cause of action may be cured by other pleading. Facts alleged by one party need not be pleaded by other. This· is rule at, common law. 21 R. C. L. 492; Hawthorne v. Smith, 3 Nev. 189.

It is never necessary to show actual express intent to defraud in order to render voluntary conveyance void as against existing creditors. If grantor was or is left insolvent, or if conveyance deprives him of means of paying his debts, intent will be inferred. 2 Pom. Eq. Jur. (4th ed.), sec. 972.

Question of fraudulent intent is one of fact and not of law, and is acid test under our statute upon which plaintiff below may recover. Rev. Laws, 1083, 1086.

It is sufficient for complaint to state and court to find that plaintiff was creditor of husband, that conveyance was made without actual valuable consideration commensurate with then value of property for purpose of hindering, etc., creditor of right to realize on judgment he might secure. Young v. Holman, 216 Pac. 177.

If sale was made with intent to hinder or delay creditors, it is fraudulent as to them, whether vendor was solvent at time or not. Klauber v. Scholss, 115 Am. St. Rep. 486.

Solvent person may transfer property with intent to defraud creditors, as well as one who is insolvent. Slade Lumber Co. v. Derby, 159 Pac. 883.

Exception to general rule is as well established as rule itself that where debtor has left jurisdiction or is nonresident and is insolvent, etc., creditor will be excused from first reducing claim to judgment. Taylor v. Branscombe, 38 N. W. 400; 27 C. J. 731.

In cases of this kind it is seldom, if ever, possible to

prove fraudulent intent by direct evidence, hence it is necessary to resort to circumstantial evidence. Badges of fraud are infinite in number and form. 27 C. J. 483, 822.

Property, once community, will be presumed to remain such until shown by clear and convincing proof to have been transmuted into separate property, as against creditors. It is immaterial that community property stands in wife's name; that is mere circumstance to be considered. Presumption attending possession by either spouse is that it is community; exceptions to rule must be proved. Laws v. Ross, 194 Pac. 467; Barrett v. Franke, 208 Pac. 435.

Money saved by wife from allowances for household expense belongs to community. Abbott v. Wetherby, 33 Pac. 1070.

No variance between pleading and proof is material unless it misleads other to his prejudice. Rev. Laws, 5066, 5080. If proof substantially supports allegation it is sufficient. 31 Cyc. 702. Evidence of actual facts will support pleading which sets up same facts according to their legal effect. New York News Pub. Co. v. Steamship Co., 42 N. E. 514.

Statements against interest made by either spouse which throw light on transaction and show intent are properly admissible.

Intent of assignor is principal question in case. It is entirely immaterial whether wife knew of husband's fraudulent intent or not. Young v. Holman, supra.

Complaint alleges sufficient facts to make this original action in equity; under "blending" statute reference to prior attachment action may be treated as surplusage.

Correct judgment will not be reversed though reasons for it are wrong. Bailey v. O'Fallon, 70 Pac. 755.

There is no wrong without a remedy. Where creditor lacks plain, speedy and adequate remedy at law equity will grant relief in first instance. Where debtor absconds and leaves no other property within reach of his creditors and wife threatens to transfer property alleged to have been fraudulently assigned to her by husband, it is

not essential prerequisite for complaining creditor to acquire lien before invoking equity. Pendleton v. Perkins, 49 Mo. 565; Scott v. McMillen, 13 Am. Dec. 239; Heaton v. Dickson, 133 S. W. 159; In Re Beckhaus, 177 Fed. 141.

General rule no longer exists in states where statute abolishes distinction between law and equity and gives same court power to administer both kinds of relief. 15 C. J. 1388.

Appellant is confined to grounds urged in lower court; respondent may advance any grounds he chooses. Clarke v. Huber, 25 Cal. 593; Davey v. S. P. Co., 48 Pac. 1117.

### OPINION

By the Court, DUCKER, J.:

This is a suit in equity, instituted by the plaintiff to have declared void an assignment of two promissory notes and the real estate mortgages securing them, the notes and mortgages decreed to be community property, and subjected to the lien of an attachment issued in another action brought by the plaintiff against the defendant, Steve B. Milisich, on his promissory note. For convenience the parties will be referred to as in the pleadings, or by their proper names.

A demurrer to the complaint was overruled. Separate answers were filed, to one of which a reply was made. A decree was rendered in accordance with the prayer of the complaint. The appeal is taken from the decree and an order overruling a motion for a new trial.

The defendants, Steve B. Milisich and Thora Milisich, are husband and wife. The main facts out of which the controversy arose are as follows: On August 18, 1920, Milisich made and delivered to the plaintiff his promissory note for the sum of $7,800. He paid $500 on the principal of the note and paid the interest to December 18, 1920. On May 10, 1918, the defendants loaned to Dennis O'Sullivan and his wife, Johanna Jane O'Sullivan, the sum of $14,000, taking their promissory note therefor payable to the former. This note

was secured by a real estate mortgage executed in favor of the defendants. On February 8, 1919, the O'Sullivans borrowed $5,000, for which they gave their promissory note payable to the defendants, and secured by a real estate mortgage executed in their favor. On July 13, 1920, Steve Milisich assigned said notes, and the mortgages securing them, to his wife, Thora Milisich.

These facts are alleged in the complaint, and, in connection therewith, it is alleged that the respective sums of $14,000 and $5,000 loaned to the O'Sullivans were community property of the defendants, and, as a result, the notes and mortgages assigned, and the moneys so secured, were and now are community property and subject to the control of Steve Milisich, and subject to the payment of community debts, and that the sum sued upon is a community debt; that the assignment of the notes and mortgages was made without consideration and with the intent to hinder, delay, and defraud the creditors of the defendant Steve B. Milisich, including this plaintiff, and that the said defendant Thora Milisich accepted and received said assignment, and the promissory notes and mortgages therein mentioned, with knowledge of the said fraudulent intent on the part of said defendant Steve B. Milisich and with intent on her part to assist the defendant Steve B. Milisich in his said fraudulent purposes.

It is also alleged that at the time the respondent accepted the promissory note of Milisich for the sum of $7,800, he fraudulently represented to plaintiff that he was the owner and holder of the O'Sullivan notes and mortgages, and that if plaintiff would advance and loan to him said sum and take and receive his promissory note therefor, he would repay the same out of the moneys represented by the notes of O'Sullivan and his wife, and thereby induced the plaintiff to loan to him said sum of $7,800, as evidenced by his promissory note. It is further alleged that plaintiff is unable to discover any other property within this state owned by said defendant Steve B. Milisich, and is informed and believes that said defendant has no other property

within this state out of which it can realize and satisfy its claim. Other facts alleged in the complaint can be more conveniently stated during the course of the opinion.

It is contended that the complaint does not state a cause of action for three reasons: (1) Because it does not show that the defendant Steve B. Milisich was indebted either to the plaintiff or to any other person, or at all, at the time when he assigned the O'Sullivan notes and mortgages to his wife, Thora Milisich; (2) because it does not show that Steve Milisich was insolvent at the time he made the assignment to Thora Milisich; and (3) because it does not allege that the plaintiff's claim has been reduced to judgment.

1, 2. We will discuss only the last objection because, in our opinion, the point raised is decisive of the insufficiency of the complaint. In support of the sufficiency of the complaint, as against the objection that a creditor must first reduce his claim to a judgment before he can invoke the aid of equity to set aside a fraudulent conveyance, it was insisted by plaintiff, when this case was first argued in this court, that the facts stated brought the case within an exception to the general rule. The facts relied upon were that the complaint charges that, in the other action on the promissory notes, summons had been issued, but not served upon Milisich; that he was residing in the city of Juarez, Mexico; that he had no property in this state other than the O'Sullivan notes and mortgages; that a specific lien on said property had been acquired in the action at law; that Milisich and his wife would, unless restrained, transfer the notes and mortgages to third parties. None of the cases presented by plaintiff, to the effect that an exception exists to the general rule requiring a creditor to first reduce his claim to a judgment where the debtor is a nonresident and has no property within the state, are in point. These cases present a situation where suit was commenced to reach equitable assets, or to set aside a fraudulent conveyance of property impressed with lien or interest of the plaintiff in the property created in some

way, and to subject the property to the payment of the debt in one suit. None of them were suits ancillary to an action at law, as is the case at bar. The prayer of the complaint in this case demands, inter alia, that the promissory notes and each of them, and the mortgages given as security therefor, be decreed to be subject to the lien acquired by this plaintiff under and by virtue of the writ of attachment issued in the action aforesaid by plaintiff against defendant Steve Milisich. On the former hearing of the case in this court, plaintiff presented authorities holding that a lien by attachment constituted an exception to the general rule, requiring a creditor to reduce his claim to a judgment before equity would interpose to set aside a fraudulent conveyance. This exception is established in many jurisdictions. 27 C. J. pp. 725, 726, 733. Counsel for defendants conceded an exception where a specific lien by attachment had been acquired, but insisted that the complaint does not state facts sufficient to show that any such lien has been acquired upon the notes and mortgages in question, and therefore the complaint fails to state facts sufficient to give a court of equity jurisdiction to set aside the assignment. The complaint, in respect to the lien alleged to have been acquired reads:

"That a writ of attachment was duly issued in the aforesaid action referred to in paragraph III of this complaint, and that, by virtue of said writ, the sheriff of Washoe County, Nevada, has or will garnish the said Dennis O'Sullivan and Johanna Jane O'Sullivan, as makers of said promissory notes and the moneys due and payable thereunder to said defendants or either of them, and that this plaintiff has and owns by virtue of said writ and garnishment thereunder a lien upon said promissory notes and the moneys due thereunder to said defendants or either of them."

The part of the allegation that the sheriff "has or will garnish" the makers of the promissory notes, is indefinite, and the whole thereof, with the exception of the issuance of the writ of attachment, is a conclusion of law. No facts are stated showing that any lien has

been acquired by virtue of the writ. It is not alleged that the writ was placed in the hands of the officer, or any facts stated to show that a valid levy under it was made by him. Milisich being a nonresident, and not having appeared in the action at law, and summons not having been personally served upon him in this state, and no valid lien having been acquired in that action upon the property sought to be reached in this suit, a judgment and execution in the former would be fruitless. Pennoyer v. Neff, 95 U. S. 714–728, 24 L. Ed. 565. Equity supplements the law but it will not do a vain act.

The failure of the complaint to allege a valid lien upon the property in question deprived the court of jurisdiction to set aside the assignment, and the demurrer should have been sustained.

3. After the submission of the case on a former hearing, and a full consideration of the questions involved, including the merits of the case, we were not satisfied on the point just discussed, and requested a reargument in that regard. The following question was submitted:

"Did the failure of the complaint in this action to show a valid lien upon the O'Sullivan notes and mortgages deprive the court of jurisdiction to set aside the assignment?"

The respective briefs of counsel and their oral argument on the last hearing manifest commendable industry in legal research and thought. Counsel for plaintiff conceded in their oral argument that the complaint does not show a valid lien acquired by attachment, and their briefs and argument are somewhat in the nature of a confession and avoidance as to the point submitted by the court. They contend that, regardless of the allegations of the complaint as to the action at law, and the attachment and garnishment proceeding, there is enough appearing from the complaint and in the record, aside from the complaint, to give the court jurisdiction to set aside the assignment. It is said also that the plaintiff is entitled to a judgment against Milisich in

this suit for the money due him. The basis for the contention that jurisdiction exists independently of any lien on or interest of the plaintiff in the property sought to be reached in this suit asserted in the complaint is a certain stipulation appearing in the record, which reads:

"It is hereby stipulated and agreed by and between the attorneys for the respective parties set forth and described in the order to show cause in the above-entitled action, made by this court on the 28th day of October, 1921, together with the mortgage made to secure the payment of the same, are now in the city of Reno, county of Washoe, State of Nevada, that said promissory notes and mortgage shall remain in said safety deposit box until the time of the termination of said cause and shall not be removed therefrom by defendants or either of them. This stipulation shall not apply to other property in said box not involved in this controversy which may be removed subject to consent of counsel for both parties.

"Dated this 4th day of November, A. D. 1921.

[Signed] Mack & Green, Attorneys for Defendants. Cooke, French & Stoddard, Attorneys for Plaintiff."

A clause in the foregoing stipulation was evidently intended to refer to the promissory notes, instead of the order to show cause. It is pointed out by counsel for plaintiff that the record shows that the action was started October 20, 1921; that a restraining order and order to show cause issued on the same day and was served October 21, 1921; that the affidavit for the restraining order showed the O'Sullivan notes and mortgages were in some safety deposit box in a Reno bank; and that on November 4, 1921, both the defendants appeared and made the foregoing stipulation, agreeing that the notes should be held in the safety deposit box until the litigation was terminated. These facts, it is urged, established an equitable lien upon said notes and the moneys represented thereby for the amount of plaintiff's claim and costs, which empowered the court to enter its decree setting aside the assignment. "At all

times," it is insisted, "from October 20, 1921, when the action was commenced, but more certainly from November 4, 1921, when the stipulation was made, the lower court had the res before it, and plaintiff had its equitable lien thereon."

This position cannot be sustained. The restraining order was invalid because the court was without jurisdiction to grant the relief prayed for. If valid, it could not have established a lien upon the notes and mortgages, and could have had no further effect than to have preserved them together with such lien as may have been impressed upon them by the allegations of the complaint, in status quo, pending a final determination of the cause. The stipulation admitted no lien upon the assigned property, which is the basis of plaintiff's claim for equity jurisdiction. The court's jurisdiction had been challenged by demurrer before the stipulation was made. By entering into a stipulation, the plaintiff has merely accomplished what a valid injunction could have effected, namely, a retention of the notes and mortgages in the safety deposit box pending the litigation. But this does not bring the res before the court.

4. The res of this suit is not the notes and mortgages, but the existence of such a lien on or equitable interest in them by plaintiff as would entitle it to a decree setting aside the assignment of them to Thora Milisich. This must appear from the allegations of the complaint, else the court is without jurisdiction of the subject matter. It is insisted that, aside from the allegations of a lien acquired in the action at law, there is sufficient in the complaint to establish an equitable assignment to plaintiff by Milisich of so much of the O'Sullivan notes debt as might be required to pay plaintiff's note of $7,800, which constitutes a lien upon the notes assigned. This contention is based upon the allegation in the complaint which reads:

"That on or about the 18th day of August, 1920, the above-named defendant, Steve B. Milisich, wrongfully, fraudulently, deceitfully, and falsely represented to this

plaintiff that he was the owner and holder of said promissory notes and each of them, and of the mortgages given as security therefor, and that if this plaintiff would advance and loan to him the sum of $7,800 and take and receive his promissory note therefor without additional signers thereon, or security therefor, that he, the said defendant Steve B. Milisich, would repay said loan to this plaintiff out of the moneys due him as evidenced by the said promissory notes of said Dennis O'Sullivan and Johanna Jane O'Sullivan, and this plaintiff, acting and relying upon the said statements and representations so made by said defendant Steve B. Milisich, and believing that such statements and representations so made to it by the defendant to be true, loaned him the sum of $7,800, as evidenced by the said promissory note described and set forth in paragraph III of this complaint."

It may be stated as a general proposition that a judgment and execution returned thereon unsatisfied, or lien acquired by attachment, upon the property fraudulently conveyed, is not indispensable in every case to enable a creditor to attack such fraudulent conveyance. A lien acquired in any way where it appears that the legal remedy is inadequate, or an equitable interest in the property or fund sought to be reached, may be sufficient to invoke the interposition of equity. This rule is amply sustained by the authorities. Does the allegation above set forth constitute an equitable assignment by Milisich to the plaintiff of so much of the fund evidenced by the O'Sullivan notes and mortgages as would be sufficient to pay the note held by plaintiff? We think not.

The doctrine of equitable assignment is not comprehensive enough to include this case. The only element of equitable assignment appearing in the allegation is a promise to pay out of a particular fund owing to Milisich. That it was a false promise, and one by which plaintiff was induced to make his loan, appears from the allegation. A mere promise to pay out of a designated fund owing to the debtor does not constitute an equitable assignment. 5 C. J. p. 913. This rule is of universal

application, as may be seen by reference to the mass of decisions cited in note 35 on page 913 of the authority just mentioned. Something more than an agreement by the debtor to pay the debt out of a particular fund is necessary to constitute an equitable assignment. An indispensable element thereof is an appropriation, either actual or constructive, of the designated fund to the payment of the debt by the assignor. And the appropriation must be of such a character that the holder of the fund could safely, under any circumstances, pay it to the assignee. The doctrine of equitable assignment is comprehensively stated in Smedley et al. v. Speckman, 157 F. 815–819, 85 C. C. A. 179. The learned circuit judge, quoting partly from Christmas v. Russell, 14 Wall, 69, 20 L. Ed. 762, said:

"A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund, even in equity. To make an equitable assignment, there should be such an actual or constructive appropriation of the subject matter as to confer a complete and present right in the party meant to be provided for, even where the circumstances do not admit of its immediate exercise. If the holder of the fund retain control over it, it is fatal to the claim of the assignee. The transfer must be of such a character, that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor.'"

Speaking to the same point, the Supreme Court of the United States said:

"But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor." Trist v. Child, 21 Wall, 441–447, 22 L. Ed. 623.

To the same effect are Hicks v. Roanoke Brick Co., 94 Va. 741, 27 S. E. 596, Commercial Nat'l Bank v. Portland, 37 Or. 33, 54 P. 814, 60 P. 563, and Fairbanks

v. Sargent, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475.

Measured by these principles, which are universally established, the claim of an equitable assignment relied on reveals no appropriation or dedication of the O'Sullivan debt to the payment of the loan made by the plaintiff to Milisich. As previously stated, it discloses merely a promise to that effect, and a false promise at that, in nowise binding upon the O'Sullivans, the holders of the fund evidenced by the notes and mortgages. Nor is the promise to pay aided by any of the other allegations of the complaint in establishing an equitable assignment.

If the allegations, to the effect that on the 13th day of August, 1920, defendant fraudulently assigned the notes and mortgages to his wife for the purpose of defrauding his creditors, including the plaintiff, be taken as true, and Milisich still retained control thereof at the time he made the promise and obtained the loan, it nowhere appears that he relinquished control of the debt owing to him from the O'Sullivans.

No notice of the alleged assignment is alleged to have been given the O'Sullivans. No word or act of Milisich is alleged in connection with the promise that would authorize the O'Sullivans to pay plaintiff's loan out of the fund owing from them to Milisich. The cases cited by plaintiff, where equitable assignments were sufficiently established to give the courts jurisdiction in the respective cases, were decided on different facts than are presented by the allegations in the instant case. For the reasons given we hold that the complaint fails to show an equitable assignment. In discussing the foregoing question, we have put out of view the obvious fact that this is not a creditor's suit, but a suit instituted in aid of an action at law, as we will hereinafter more specifically point out.

5. It is stated in plaintiff's brief, and extensively argued, that under our reformed procedure, as prescribed by the Constitution in the provision which reads:

"There shall be but one form of civil action, and law and equity may be administered in the same action," (Const. art. 6, sec. 14),

—and by statute (2 Rev. Laws, sec. 4943), in conformity

therewith, there cannot be an action at law and a suit in equity concerning the same subject matter. Counsel for plaintiff in their brief say:

"There cannot exist in this state a subordinate action in aid of a principal or primary one, because this means two actions embracing one subject matter, which is partly legal and partly equitable, and both our constitution and statute forbid the bringing of two actions in such cases because it is declared that 'There shall be but one form of civil action,' etc."

Hence it is urged that the allegations in the complaint as to the action at law and attachment and garnishment proceeding, and prayer of the complaint, must be disregarded; and that, stripped of these allegations, the complaint contains a complete case in equity, which, if established, would entitle plaintiff to a judgment against Milisich for the money due plaintiff, and setting aside the fraudulent assignment. We need not pass upon the first branch of the proposition as to whether a suit in equity may not be maintained as ancillary to an action at law. For, either with or without the allegation as to the latter action, the complaint presents no ground for the interposition of equity, within the principles which we have stated, and which we hold are applicable to the allegations of the complaint. But whether plaintiff was entitled to a judgment for the debt or not, the lower court did not render such a judgment, nor do we think it could have rendered such a judgment without entirely disregarding the nature of the suit, as revealed by the allegations of the complaint.

It appears both from the allegations of the complaint and the prayer thereof that no judgment for the debt is sought in this suit, and that it was instituted to set aside a fraudulent assignment of property that it might be subjected to satisfaction of the judgment for the amount of the note and interest to be recovered in the action at law. After alleging the execution and delivery of the note, and setting forth the note in hæc verba, it is alleged "that an action is now pending in the above-entitled court, in department 2 thereof, in which plaintiff herein is the plaintiff and the above-named

defendant Steve B. Milisich is the defendant, for the recovery of the sum of $7,300 due and owing by the said defendant upon the principal sum of the note, together with the accrued interest thereon." The prayer of the complaint is: (1) For an injunction against the defendants restraining them from in any way transferring the notes and mortgages; (2) that the assignment be declared null and void and the promissory notes and each of them, and the mortgages given as security therefor, and each of them, be decreed to be community property of said defendants; (3) that said promissory notes and each of them and the mortgages given as security therefor, and each of them, be decreed to be subject to the lien acquired by this plaintiff, under and by virtue of the writ of attachment issued in the action aforesaid by it against defendant Steve B. Milisich; and (4) for costs and general relief.

Judgment was rendered in conformity with the prayer and with the facts alleged in the complaint. If we grant, merely for the purpose of argument, plaintiff's contention that the action at law was illegally instituted, and the allegations thereof in the complaint consequently surplusage, and that the lower court, instead of decreeing that the promissory notes and mortgages be subject to the lien acquired by the plaintiff under and by virtue of the writ of attachment issued in the action at law, should have rendered judgment for the debt in the suit, then we say that such judgment would have been unwarranted by the pleadings. Nowhere in the complaint does it appear, even inferentially, that plaintiff seeks a judgment in this suit for the sum of money due on the note. Such a demand is not made in the prayer of the complaint, nor is it embraced within any issue made by the pleadings.

6, 7. It is urged that defendants are not entitled to rely on the point, for the reason that it was not raised in the court below, nor raised here in their opening brief, as required by Statutes of 1923, p. 164, c. 97. A complete answer to the second branch of this contention is found in section 4 of said act, which reads:

"The supreme court shall not decide any case on any

point not raised in the opening brief or briefs in answer thereto without first giving all parties affected an opportunity to be heard upon such point."

The court has complied with this provision by submitting the question to counsel for the parties for reargument, and a reargument thereon has been duly made, as appears from this opinion. But it is not exactly accurate to say that the point was not made in defendants' opening brief. In their opening brief it was stated, as a third ground why the complaint did not state a cause of action, that it did not show that plaintiff's claim had been reduced to a judgment. In support thereof authorities were cited holding that a general creditor must reduce his claim to judgment before he could have relief in equity to reach property of a debtor not subject to seizure at law. Counsel for plaintiff, in their answering brief, replied to this contention and presented authorities to the effect that a creditor's bill could be maintained without reducing the claim to judgment, where a specific lien by attachment or otherwise had been acquired, and also where the creditor was a nonresident or insolvent. To this counsel for defendants, in their closing brief, replied by pointing out that no valid lien by attachment was alleged in the complaint. The point was further discussed by counsel for the parties in supplemental briefs. So, while technically speaking, the point which we conclude is decisive of this case was not precisely stated in the opening brief, it was gradually evolved from what was stated and has been thoroughly discussed by counsel in this court. The disadvantage, which the provision of the statute of 1923 seeks to obviate by requiring counsel to state in his opening brief the points and errors on which he will rely, has not been suffered by plaintiff's counsel.

8. As to the first branch of the contention, that the question was not raised in the court below, it is sufficient to say that it goes to the jurisdiction of the court and may be raised at any time. Nielson v. Rebard, 43 Nev. 274, 183 P. 984.

In the case of Allen v. Ingalls, 33 Nev. 281, 111 P. 34,

114 P. 758, cited by counsel for defendants, in which the court refused to consider a question raised for the first time on appeal, the question was not a jurisdictional one.

The judgment is reversed.

COLEMAN, C. J., concurring:

I concur in the foregoing opinion and order. I am in harmony also with the rule laid down in the case of Patchen v. Rofkar, 12 App. Div. 475, 42 N. Y. S. 35, upon which I understand Mr. Justice SANDERS will base his dissenting opinion. That case, however, was not one which was auxiliary to an action at law, as in the instant case, but was an independent suit wherein matter was alleged and proven dispensing with the necessity of such an action at law. If we should affirm this decree, no result favorable to the plaintiff could flow therefrom so far as has been made to appear, for the reason that the decree is entirely dependent upon the result in the law action in which no judgment in favor of the plaintiff has been or can be rendered, so far as the record in this case shows. In other words, a decree has been entered in this case adjudging that the securities in question of the value of $19,000 be held subject to a judgment sought in the sum of $7,300 that never can be rendered. I do not think that any court of final resort ever held that such a thing can or should be done.

It may be—indeed, I think there is—a theory upon which judgment and decree might be entered in this case which would protect the respondent, but the theory in mind has not been presented in the argument, and, in view of the statute of 1923, I do not feel justified in offering any suggestion in the matter.

SANDERS, J., dissenting:

In the opinion of the majority of the court it is not considered necessary, in disposing of this case, to look into the evidence or proceedings of the court below, because the failure of the complaint to show that the court had jurisdiction over the person or property of

the defendant Steve Milisich is deemed fatal to this suit. As I dissent from this conclusion, I shall confine myself to the discussion of the point decided.

It appears affirmatively from the complaint that the plaintiff, prior to the bringing of this suit, had sued the defendant Steve Milisich on the law side of the court below to recover a money judgment upon his negotiable note for the sum of $7,800. It appears that, at the time of the issuance of the summons in the law action, an attachment was issued against the property of the defendant as security for the satisfaction of any judgment the plaintiff might recover. The record does not disclose upon which of the nine grounds allowable under the statute the attachment was issued, but I shall assume that it was issued upon the eighth ground, namely, "where a defendant has assigned, removed, disposed of, or is about to dispose of his property, or any part thereof, with the intent to defraud his creditors." Section 5147, Revised Laws. It is conceded that while the law action was pending this suit was filed against the defendant Steve Milisich, and his wife, Thora Milisich, was made a party defendant. She interposed a demurrer to the complaint, upon the grounds that the same did not state facts sufficient to constitute a cause of action against her, and that the complaint did not state facts sufficient to entitle the plaintiff to the relief sought by it. The demurrer concedes that the main purpose of this suit was to remove the fraudulent transfer by the husband to the wife of certain notes, referred to as the O'Sullivan notes, so that the same might be applied in satisfaction of the husband's debts, particularly his debt to plaintiff, which was sued upon in the attachment suit then pending and still undetermined. The ground for equitable relief, pleaded in the complaint, is the fraudulent transfer of the O'Sullivan notes with intent to hinder, delay and defraud the creditors of the assignor.

It is conceded that, at the time of the commencement of the law action and of this suit, the defendant Steve Milisich was not within the jurisdiction of the courts in

this state, and no personal service of summons could be made upon him. No service could be made by publication of the summons so as to procure a personal judgment against him, inasmuch as no attachment could be levied upon any property of his in this state after the making of the assignment to his wife of the O'Sullivan notes. The demurrer concedes, that, at the time of the commencement of the law action, Steve Milisich had departed from the jurisdiction of the courts of this state without leaving any property here except the O'Sullivan notes assigned to his wife; that he was insolvent; and that he resided at the time in the city of Juarez, Mexico. It thus appears, from the admitted facts, that the plaintiff could in no way secure a judgment in this state against Steve Milisich for the amount of his indebtedness, and that he was insolvent.

The assignment of the O'Sullivan notes with intent to defraud the creditors of the assignor is void by statute. Section 1083, Revised Laws. The complaint alleges, in substance, that Thora Milisich was concerned in the fraud and accepted the assignment with full knowledge thereof. She therefore became a trustee ex maleficio for the benefit of her husband's existing and subsequent creditors. 20 Cyc. 630.

While the authorities are in conflict, I am of opinion that the better reason supports the view that the resulting trust created by the statute (section 1083, Revised Laws) may be enforced in favor of the plaintiff, even though its claim had not been reduced to judgment, the debtor being a nonresident, and beyond the jurisdiction of the court, and having no property here which can be appropriated by proceedings at law to the satisfaction of the plaintiff's claim. Overmire v. Haworth, 48 Minn. 372, 51 N. W. 121, 31 Am. St. Rep. 660. In addition to the authorities cited in Overmire v. Haworth, I cite the case of Patchen v. Rofkar, 19 App. Div. 475, 42 N. Y. S. 35; Id. 52 App. Div. 367, 65 N. Y. S. 122.

I am not concerned with the prayer of the complaint, provided the same states facts which entitle the plaintiff to the equitable relief sought by it. My associates

seem to be of the opinion that while the complaint states an action for the equitable interposition of the court, the suit as an auxiliary proceeding to the plaintiff's action at law is not maintainable, for the reason that the law court had no jurisdiction over the person of Steve Milisich or his property, and therefore. the court of equity was without jurisdiction to grant the relief sought. I am of opinion that, under the particular facts conceded by the demurrer, the ordinary course of legal proceedings in the action at law afforded the plaintiff no adequate or real means of redress. The defendant was a nonresident and had no property in this state out of which the plaintiff could enforce its claim, and plaintiff could not procure service of summons upon him so as to subject him to the jurisdiction of the courts of this state. The main question therefore for decision is: Is the plaintiff upon this state of facts entitled to invoke the aid of a court of equity?

Whether this suit is to be regarded as auxiliary to the plaintiff's action at law or as an independent action is immaterial. The case is one in which the plaintiff could recover upon its claim no judgment entitling it to have an execution issued and returned in the action at law. The support of this suit in any view of the complaint is dependent upon the inherent powers of the court of equity. No reason appears why these powers are not available to give a party, situated as plaintiff is, a standing in court.

The facts in the case of Patchen v. Rofkar, supra, are applicable to the facts of this case, as conceded by the demurrer. In the course of its opinion the court said:

"When a party has done all that is possible for him to do to prepare the way for his case to equitable cognizance, he is not to be denied access to the only tribunal capable of granting relief, merely because he had proceeded no further than he was, without any fault or laches on his part, permitted to go. That would be repugnant to the maxim that 'there is no wrong without a remedy.' "

The very necessity for the interposition of a court of equity in this case was the impossibility of acquiring jurisdiction over the person of the defendant Steve Milisich in the action at law, and the impracticability, if not impossibility, of proceeding farther with that action. The plaintiff certainly had done all it was possible for it to do to prepare the way for its case to equitable cognizance, and I do not think that it should be denied access to the only tribunal capable of granting relief merely because it had proceeded no farther with its law action, for the obvious reason that it was impossible to secure a judgment therein for the amount of its indebtedness before commencing this suit.

The general rule that before a simple contract creditor can ask the intervention of a court of equity to set aside a fraudulent assignment he must reduce his claim to judgment against his debtor and procure an execution thereon to be issued and returned unsatisfied, is so thoroughly established as to be elementary, but the exceptions to the rule have become as well settled as the rule itself.

In Williams v. Adler-Goldman Commission Co., 227 F. 374, 142 C. C. A. 70, it is said:

"A prior judgment at law and unavailing process are not conditions on which equitable jurisdiction is founded. They do not constitute the basis on which the right to equitable relief rests. They are rather an element in procedure and not in equitable right. The facts which they are taken to establish, by the general rule, may be made to otherwise appear, and thus exceptions to the general rule are recognized and have become as well established as the rule itself."

Nonresidence of the debtor and also his insolvency have each been held sufficient to dispense with prior judgment and execution at law. There is abundant authority, both state and federal, for this proposition. See cases cited in Williams v. Adler-Goldman Commission Co., supra.

But, without pursuing this subject further, it may be said that when such a bill of complaint as this is

sustained without a judgment at law, it has been to enable the creditors to obtain a lien, either by judgment or execution. Anthony v. Jasper County, 101 U. S. 688, 25 L. Ed. 1004.

The most charitable view to be taken of the paragraph of the complaint quoted in the opinion of Justice DUCKER, in respect to the issuance of attachment, garnishment, and lien thereunder, is that the statements therein are incongruous and nullify its averments. I assume that the paragraph was inserted by way of anticipating the defense that the creditor must first establish his claim at law, before equity will take jurisdiction. Since the complaint states sufficient facts to dispense with prior judgment and execution at law, no unfavorable inference is to be drawn from the paragraph in respect to the issuance of an attachment and the acquirement of a lien thereunder.

I concede that a creditor must, if he can, first establish his claim at law, before equity will take jurisdiction of a cause to reach a fund which cannot be reached by process of law. But whether a court of equity will require the claim to be reduced to a judgment at law depends upon the peculiar circumstances of each case. Kent v. Curtis, 4 Mo. App. 121. I see no reason why the plaintiff in this instance should be required to do an impracticable, futile, and impossible thing as a necessary condition prerequisite to equitable interference.

The fact that an injunction is sought against the defendant Thora Milisich, as auxiliary to the plaintiff's action at law already begun and pending, is no bar to the present action, since the object desired cannot be obtained in the law action. High on Injunction (4th ed.), sec. 32.

The main object of chancery jurisdiction is to furnish a remedy when the strict rules of legal practice fail. This whole case, in my judgment, comes back to the fundamental inquiry: Had plaintiff a complete and adequate remedy at law? I think the absence of any legal remedy sufficiently appears by the complaint, and the plaintiff is entitled to the intervention of a court of

equity; otherwise, it must suffer a wrong without a remedy.

Entertaining these views, I dissent from the conclusion of the majority of the court, and feel that the case is one that should be reviewed upon its merits.