# E. R. COX *v.* T. G. SMITH, ET AL., BOTH PARTIES APPEALING.

It is a settled rule in Courts of equity that a contract for future compound interest will not be enforced. The rule in Courts of law is not so well settled in regard to such contracts.

Our statute does not sanction compound interest. Contracts, therefore, in regard to compound interest, must stand or fall by the established rules of equity and common law Courts. It is held in this State that contracts for compound interest cannot be enforced.

If A borrows fifteen hundred dollars in gold from B when that gold would be worth twenty-five hundred dollars in Government paper currency, and gives his note for twenty-five hundred dollars, the note is a valid note with sufficient consideration. There is neither a want of consideration nor a failure of consideration.

When a note is made payable at a given day, with interest at the rate of six per cent. per month until paid, it continues to draw six per cent. interest after maturity and after judgment.

The mortgagor may contract to pay a counsel fee for the expense of enforcing the lien on the property mortgaged in case legal proceedings have to be taken. And such contract will be enforced to the extent of allowing a *reasonable* coun-

11

sel fee beyond the costs allowed by law. The Courts will believe that to be reasonable for which the parties themselves contract, unless it be extravagantly large and apparently so made as to hold *in terrorem* over the mortgagor.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Ormsby County, Hon. S. H. WRIGHT presiding.

The facts are stated in the opinion.

*R. W. Clarke,* Counsel for Cox.

*Atwater & Flandreau,* for Smith & Garrett.

Points and authorities of Cox's counsel:

*First*—Any rate of interest the parties may agree on in writing is lawful. (Statutes of 1861, p. 100.)

There being no legal restriction on contracts for interest, contracts for compound interest must be lawful. (2 Parsons on C. 384–5.)

Such contracts are not against public policy. (Chitty on Contracts, 9th Am. edition, 671 ; 4 Bouvier, 177.)

The statute forbidding compound interest after judgment by implication, admits it before. The weight of modern authority is in favor of sustaining contracts for compound interest, even where the rate of interest is limited. (Parsons on Contracts, pp. 428–9–30 ; 2 Nott & McC. 38 ; 2 Hill S. C. 408 ; 3 Rich. 125 ; 1 N. H. 179 ; 1 Am. Leading Cases, 533 ; 3 N. H. 40 ; 4 Yates, 220 ; 11 Conn. 488, 496 ; 1 Strobhart, 115, 116 ; 4 Hammond, 373 ; 9 Dana, 331 ; 5 Paige, 98 ; 23 Pick. 167 ; 17 Conn. 244, 247.)

*Second*—Fifteen hundred dollars, in the absence of usury laws, is sufficient consideration to support note for twenty-five hundred dollars. (Parsons on Contracts, 362–3, and notes P and G.)

The note was a currency note ; the laws of Congress, of the State, and the business community, all recognize the difference between gold and currency. Fifteen hundred dollars in gold was sufficient consideration for a twenty-five hundred dollar currency note.

A Court of equity will not grant any relief to Smith & Garrett until they see that Cox is paid in the same kind of money he advanced, or its equivalent in value, with interest. (Willard's Equity, 46; 3 Sand. 671; 7 Hill, 391; 3 Paige, 533; 11 Wend. 329; 4 Bouvier, 178, 179.)

Interest at stipulated rate continues after breach. (Statutes 1861, p. 100, secs. 4, 5; 2 Cal. 597; 5 Cal. 417; 6 Cal. 155; 9 Cal. 247–297.)

Parties may liquidate their damages. (2 Parsons on Contracts, 433; Sedgwick on Damages, 417, 440, and notes.)

A stipulation for a reasonable counsel fee will be enforced. (2 Parsons on Contracts, 441 to 446; 5 Cal. 435.)

Points made by counsel for Smith & Garrett:

*First*—Smith & Garrett, as second mortgagees, the property being insufficient for both debts, may insist that first mortgagee shall only be paid what is actually due to him. The actual consideration paid for the note was fifteen hundred dollars. The laws know no difference between dollars.

*Second*—Interest only exists by and is the creature of a contract. (*Rens. Glass Factory* v. *Reid,* 5 Cow. R. 587—opinion of Senator Spencer, at page 609, where he gives the history of interest; *Colton* v. *Bragg,* 15 East. R. 226; *Macomber* v. *Dunham,* 8 Wend. 552–3—opinion of Nelson, Justice; *U. S. Bank* v. *Chapin,* 9 Wend. 471; *Lloyd* v. *Scott,* 4 Peters, 226 —opinion; *Mason & Craig* v. *Calendar, Flint & Co.,* 2 Minn. 350; *Talcott* v. *Marston,* 3 Minn. 339.)

*Third*—The note and interest was payable one year after the date by the contract. At the end of one year there was a breach of the contract.

For the continued failure to pay after breach the mortgagor was liable to damages. The law in such cases does not allow parties to contract for liquidated damages. The law itself fixes the compensation for such breach. (*U. S. Bank* v. *Champion,* 9 Wend. 471.)

*Fourth*—The law fixing the rate of damages for non-performance of contract to pay money is fixed and unchangeable. It is the legal rate of interest in the country where the contract is made. (Sedgwick on Measure of Damages, p. 235;

1 Am. Leading Cases, 498; 6 Howard U. S. 154; 2 Minn. 363; 3 Minn. 339.)

*Fifth*—That rule of damages cannot be altered by the parties. (*Bagley* v. *Piddie,* 5 Sand. 194; 3 John. Cases, 297, notes A and B; 5 Cowen, 144, note B; 1 Denio, 464; 22 Wend. 163; Adams' Equity, 304–5; 2 Minn. 369.)

Stipulated damages must be in lieu of performance. (18 John. 209; 7 John. 72.)

*Sixth*—Our statute fixes a legal rate of interest. (Statutes 1861, p. 100; *Talcott* v. *Marston,* 3 Minn. 346.)

*Seventh*—The counsel fee is on its face unreasonable and inequitable, and should not be allowed. (*Griswold* v. *Taylor,* 6 Minn. 342; *Talman* v. *Truesdale,* 3 Wis. 443.)

*Eighth*—The fact that our law is a copy of the California law as to *interest,* but does not copy the section in regard to *compound interest,* is conclusive that it was not intended to allow compound interest.

*Ninth*—Compound interest was never allowed in any civilized country. (*State of Conn.* v. *Johnson,* 1 John. Ch. 13; *Van Benschooten* v. *Lawson,* 6 John. Ch. 313; *Toll* v. *Hiller,* 11 Paige, 228; *Mowry* v. *Bishop,* 5 Paige, 98; *Boyer* v. *Pack,* 3 Denio, 107.)

Recovered back. (Kelly on Usury, 35; 8 Blackf. 158; 8 Mass. 455; 7 Greenleaf, 48; 19 Maine, 31–40; 3 Wash. C. C. R. 401; 17 Mass. 417; 4 Rand. 406–8; 13 Metcalf, 65; 10 Leigh. 481; 1 Ark. 410; 9 Ves. 271; 2 Minn. 350.)

Opinion by BEATTY, J., full Bench concurring.

In August, 1863, Robert Logan and Wellington Stewart executed to plaintiff the following note:

"$2,500.            CARSON CITY, NEVADA TERRITORY, }
                              August 25, 1863.        }

"For value received, we, or either of us, promise to pay E. R. Cox or order, in twelve months from date, without grace, the sum of twenty-five hundred dollars ($2,500), with interest thereon, at the rate of six (6) per cent. per month, payable monthly in advance, on that day of each and every month

corresponding with the date of this obligation until paid; and if any part of the interest herein provided shall not be paid when the same becomes due, then the holder hereof may add the same to the principal sum, and it shall thereupon become a part of said principal and bear monthly interest at the same rate, and so on from month to month, adding all interest in arrear to such principal, and compounding interest on interest at the same rate, and making monthly rests on that day of each month, corresponding to the date of this obligation, and in case a cause of action shall accrue on this obligation, and the payee or holder hereof shall commence a suit to enforce the same, then it shall be lawful for the said payee or the holder hereof to have and demand upon the same ten (10) per cent. upon the amount which shall be recovered thereon as a reasonable indemnity for attorney and counsel fees, in addition to the taxable costs of suit, and in case of judgment or decree, said percentage shall be included therein and bear interest at the same rate and in the same manner as the principal debt.

"ROBERT LOGAN,

"WELL. STEWART."

This note was secured by a mortgage on certain real estate. In March, 1864, Wellington Stewart executed several notes to Robert Logan, and to secure the payment of the same executed a mortgage on certain real and personal property.

The most valuable part of the property embraced in the mortgage from Stewart to Logan was also embraced in the joint mortgage of Stewart and Logan to Cox; so that Logan, as to the principal part of his security, stood in the position of second mortgagee. Logan assigned his notes and mortgage to J. E. Garrett and T. G. Smith.

The property mortgaged is insufficient to pay all the incumbrances, and the controversy in the case is between the first mortgagee, E. R. Cox, and Garrett & Smith, who are the successors in interest to the second mortgagee. When Cox took the note which is set out in the beginning of this opinion, he advanced or loaned to Stewart and Logan only fifteen hundred dollars in gold coin, but that fifteen hundred dollars was worth, and would have purchased in currency, the sum of

twenty-five hundred dollars.    There was a verbal agreement made when the note was executed, that fifteen hundred dollars in gold coin would be accepted if offered in lieu of the twenty-five hundred dollars.

Upon the foreclosure of the mortgage the parties holding the second mortgage raised these points: 1st, The plaintiff was not under our statutes entitled to compound interest on his claim.    2d, He could only recover the actual amount loaned, fifteen hundred dollars, and interest.    3d, The demand after maturity only bore interest at ten per cent. per annum.    4th, The counsel fee as stipulated in the note was exorbitant, and would not be enforced in a Court of equity—but only an allowance of a reasonable counsel fee.

The Court below held with the second mortgagees as to the first point, only allowing simple interest.    On the other three points that Court held with the first mortgagee.    Both parties appeal.    The plaintiff from that part of the decree adopting *simple* interest as the rule of computation, and refusing *compound* interest; Garret & Smith, from those portions of the decree having reference to the other three points just mentioned.    We shall first examine the point raised by plaintiff's appeal.

In the statutes of California, from which ours have generally been copied, two Acts are to be found, one entitled "An Act in relation to the money of accounts of this State," the other entitled, "An Act to regulate the interest of money."    In our statutes these two Acts have been blended into one, entitled, "An Act in relation to money of account and interest."

Sections 1st, 2d and 3d of our Act are in the same language precisely as the three sections of the first named California Act, with the exception, the word "Territory" is substituted for "State" in the first section.    The phraseology of both statutes are in some particulars a little peculiar, and it is evident ours was copied from the California Act.    The fourth section of our Act, which fixes the legal rate of interest (in the absence of an express written contract), is identical with the first section of the second named California Act, with the exception of two words.    Our statute contains the word "or" in one part of a sentence where it ought not to be.    This is evidently

a mistake in the printer or some copyist, but does not in the slightest degree alter or obscure the meaning of the sentence. The word "Territory" is substituted for "State." This section is evidently copied from the California statute.

The 5th and last section of the Nevada Act is in these words:

"Sec. 5. Parties may agree in writing for the payment of any rate of interest whatever on money due, or to become due on any contract. Any judgment rendered on such contract shall conform thereto, and shall bear the interest agreed upon by the parties, and which shall be specified in the judgment, provided only the amount of the original claim or demand shall draw interest after judgment."

This fifth section is an exact copy of the second section of the last named California Act, down to the proviso. Nothing like the proviso is found in the California Act.

Whilst our Act ends with this proviso to the fifth section (2d of the Cal. Act), the California Act from which it is copied contains a third section which is in these words: "Sec. 3. The parties may in any contract in writing whereby any debt is secured to be paid, agree that if the interest on such debt is not punctually paid it shall become a part of the principal, and thereafter bear the same rate of interest as the principal debt."

The copying of two sections of the California Act and omitting the other, indicates that the omission was made *ex industria* and for a purpose. The journals of the Legislative Assembly show, too, that this third section of the California Act was at one stage of the proceedings before that body, embraced in the bill and afterwards stricken out.

To our mind this is conclusive that the Legislature did not intend by their action to sanction or encourage compound interest. In the proviso above referred to they expressly prohibit compound interest in judgments.

If we are correct in the foregoing views as to the effect and proper construction of our statute, the only remaining ground on which the plaintiff can claim to support his theory is, that the Legislature failing to sanction *compound interest* by express enactment, cannot operate as a prohibition, but leaves the question

just where it stood at common law. It may not then be improper to inquire, what was the rule of common law? We find that there is great contrariety of opinion as to what was the rule of the common law before the statute of 37, of Henry VIII. According to the opinion of some authors all interest on money was usurious and unlawful before that time. On the other hand, Chief Justice Hale held that the common law only prohibited as usurious and unlawful interest which amounted to forty per cent. per annum or more.

On this subject Bacon's Abridgment Title Usury may be consulted by those who are curious as to the ancient law. Also the opinion of Senator Spencer in the case of *Rens. Glass Factory* v. *Reid*, 5 Cowen's Report, 609. Perhaps the discrepancies of opinion on this subject may be accounted for in this way. At an early period in England the Chancellors were generally churchmen, and not lawyers. As the Catholic church has always set its face against usury, and been disposed to condemn the practice of exacting interest as immoral, and more especially as the Jews at that early day were almost the only money lenders, it is probable that the Chancellors held all interest usurious and illegal; whilst the common law Courts, presided over by lawyers, better acquainted with the commercial necessities of the country and less prejudiced against the Jews, may have held that *reasonable interest* was not unlawful.

It is more profitable, however, to inquire what was the state of the law on this subject, as established by the Courts of equity and common law at the time our statute was passed. In American Leading Cases, vol. 1, pp. 533-4, the principal American cases on the subject of *compound interest* have been cited and commented on.

The general conclusion at which the author arrives is that the "better opinion is that at law such an agreement made, either at or after the time of the original contract, will be enforced." In support of this proposition the commentator cites several cases. On the other hand, on the same page, a large number of cases are cited holding an opposite doctrine. In chancery this commentator admits the rule has been different, and Courts of equity have uniformly discountenanced all attempts to collect compound interest except in those cases

where the contract to pay the same was made after the simple interest fell due.

So far as the reports referred to were accessible to us, we have only found two cases where actions at law have been sustained on a contract for payment of *compound* interest, with the exception of cases where the agreement to pay the compound interest was made after the simple interest became due. One of these cases was *Greenhoff* v. *Kellogg*, 2 Mass. 568, afterwards overruled in *Hastings* v. *Wisnell*, 8 Mass. 455, and *Henry* v. *Flagg*, 13 Metcalf, 65.   The other case is *Talliaferro's Est.* v. *Rings*, Adm'r., 9 Dana, 331.

The New York, English and Massachusetts decisions (except the one overruled case in Massachusetts) seem to be all the other way.

The opinion of Chancellor Kent in 1 Johnson's Chancery Reports, p. 13, against the policy of allowing compound interest is, we think, exhaustive of the subject, and settles conclusively what is the rule of equity.

Then, when the Nevada statute was passed, it was the settled rule of Courts of equity to refuse to allow compound interest when their aid was invoked to collect a debt.   In Courts of law the rule was not so well settled, but we think a majority of the States of this Union, and the English Courts of law, had refused to enforce that portion of contracts which provided for the collection of compound interest.

None of these rulings were founded on the statutes against usury, but the general principles of the common law as it existed without reference to the usury law.   Our conclusion then is, that the Court below did not err in refusing to allow compound interest, and the judgment of that Court as to the part thereof appealed from by the plaintiff must be affirmed.

Having disposed of the plaintiff's appeal, we will now consider those portions of the decree from which defendants appeal.   The first objection on the part of defendants to the decree is that plaintiff is allowed to recover twenty-five hundred dollars, when he only loaned fifteen hundred dollars.   The loan was made in coin, and it is admitted the fifteen hundred dollars would have purchased twenty-five hundred dollars in Government currency.   If the plaintiff had bought twenty-

five hundred dollars with his fifteen hundred dollars in gold, and loaned the twenty-five hundred dollars in paper, no one would have claimed that the note for twenty-five hundred dollars, was not a valid note, founded on a good and sufficient consideration.

Why then is it less adequate when the borrower gets that · for which he could have purchased or procured twenty-five hundred dollars. The Courts must recognize the fact that there are two kinds of currency of unequal value, and they must presume that a debtor will pay in that kind of currency which is least onerous to himself. Therefore when a man borrows the more valuable kind of currency, and gives his note for a larger sum, payable in dollars, generally the presumption is he intends to pay in those dollars which are least valuable. We can see nothing illegal or immoral in such a transaction. If there is nothing morally wrong in the transaction, on what principal can it be claimed that a part of the note is not recoverable. It cannot be said that such a note is *without* consideration, or that there has been any *failure* of consideration. The party borrowing has received all he expected to receive, all he contracted to receive, and has received that which in value was equal to twenty-five hundred dollars in currency.

The Court will presume he did not intend to pay it in any better money than currency, and that it could not be enforced in any other kind of money.

We therefore hold that the Court below ruled correctly in allowing the plaintiff to recover to the amount of twenty-five hundred dollars and interest.

Before leaving this branch of the case we will say, no question as to the constitutionality of the Act of Congress making treasury notes a legal tender for debts was raised.

We therefore have not examined that question in connection with the subject, but assumed the law to be constitutional.

But even if it were otherwise, we cannot see that it would vary our decision on this point. If we had a uniform metallic currency, and a borrower were, on the receipt of fifteen hundred dollars, to give his note for twenty-five hundred dollars, payable one month after date, we do not see on what principle

Cox *v.* Smith *et al.*

the Court could relieve him from the note, if there was no fraud, or mistake, or imposition in the transaction.

The next ground of complaint on the part of defendants is, that the plaintiff is allowed to recover six per cent. per month on his demand after the note fell due. It is contended that our statute only allows parties to contract for stipulated rates of interest during such time as the contract is unbroken. That upon the breach of the contract the law steps in and fixes arbitrarily what shall be the measure of damages for the breach of the contract, and that measure is interest at the rate of ten per cent. per annum. The rule is well established that in actions for the breach of a contract for the payment of money, the measure of damages shall be the legal interest on the money for the time it is withheld, and no special damage can be proven or shown. But what is the legal rate of interest under our statute? If the contract is in writing, whatever rate of interest is established by that contract is the *legal rate* so far as that controversy is concerned.

The law allows the parties themselves, by due formalities, to fix the legal rate. The law provides that when the judgment is entered up, the debt shall bear that rate of interest which the parties have contracted shall be the legal rate for that particular transaction. It is what the parties have agreed is the value of the use of the money before breach. It is the interest or damages which the law gives after judgment. It would be strange if, between breach and judgment, the measure of interest or damages should be different.

It seems to us the intention of the Legislature was clear that parties might contract for any rate of simple interest (but not compound), and that interest should continue to run on the principal sum until paid.

The parties have contracted it should so run in this case, and we can see no principle of law upon which they can escape their contract. The principle claimed is that they can escape the consequences of a contract (which the law allows them to make) by refusing to comply, and throwing obstacles in the way of a prompt judgment. No doubt the law might prohibit the collection of a greater rate of interest than ten per cent. on a debt past due. But we think the Nevada Legislature

neither did nor intend any thing of the kind. Upon this point we think the judgment of the Court below correct.

The only remaining question is as to the allowance of five hundred and five dollars for counsel fee. On this point we feel some embarrassment in coming to a conclusion. We are satisfied that the amount is more than a reasonable fee for the foreclosure of the mortgage. But the amount is clearly fixed by the agreement of the parties, and we cannot say it is so unreasonably large, so extravagant in amount as to induce a Court of Chancery to disregard the plain meaning and intent of the parties. We doubt extremely the policy of enforcing *any* contract whereby the mortgagor makes himself responsible for counsel fees.

We think it has a tendency to encourage extortionate and oppressive contracts, and is at war with the best interests of society. But all the cases we find reported on this subject hold that a *reasonable* counsel fee may be contracted for in such cases, and a Court of equity will enforce the agreement.

In all the cases called to our attention in which this point has arisen, the Courts have allowed *the* counsel fee charged, but have generally used some expression indicating that the charges allowed were reasonable, and that if unreasonable counsel fees were allowed, the Court would interpose its authority to protect the mortgagor.

No rules, however, as to what are reasonable fees and what are not, are established. All that is said about *reasonable* fees, amounts to mere *dicta* or surmises.

In this case the counsel fee is certainly very *liberal*, to say the least of it, but not more extravagant than the rate of interest contracted for. Not finding any adjudicated cases authorizing such interference, and the amount not being so extravagant as to show that it was intended as a penalty to be held *in terrorum* over the mortgagor, this Court will not interfere with the judgment of the Court below.

The judgment of the Court below is in all things affirmed. Each party will pay their own costs.