M. R. JONES and Carl Jones, Appellants,

v.

Jack W. DICKENS and Lucille B. Dickens, Appellees.

M. R. JONES and Carl Jones, Appellants,

v.

THREE RIVERS RANCH, INC., Appellee.

Nos. 9606, 9607.

United States Court of Appeals
Tenth Circuit.
May 13, 1968.

David R. Gallagher, Albuquerque, N. M. (William C. Marchiondo, Albuquerque, N.M., on the brief), for appellants.

Wm. A. Clifford, Lubbock, Tex. (Hernandez, Atkinson & Kelsey and W. W. Atkinson, Albuquerque, N.M., and Blanchard, Clifford, Gilkerson & Smith, Lubbock, Tex., on the brief), for appellees.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

Appellants appeal from judgments against them upon two promissory notes each in the amount of $50,000. The notes were executed by them as down payments on two ranches they were buying. Appellants contend the trial court erred in concluding that they waived defects in the title to one of the ranches, and in concluding that the notes were liquidated damages and not penalties.

Appellees Dickens entered into a written contract with the appellants to sell to them a ranch in Colorado, known as the North Park Hereford Ranch. The agreed purchase price was $500,000 to be paid: "The sum of * * * ($50,000.-00) in hand paid and receipted for hereby, and the balance of the purchase price upon approval of title and tender of warranty deed, which said approval and tender shall be at the time of final closing * * *." This sale was conditioned upon the closing of the sale of an adjacent ranch also being sold to appellants by appellee in No. 9607, the Three Rivers Ranch, Inc. The concurrent sale of the Three Rivers Ranch was to be for a purchase price of $1,075,000 to be paid: "1. $50,000.00 down payment in hand paid, receipt of which is hereby acknowledged. 2. $1,025,000.00 cash or cash equivalent, to be paid at the closing." The sellers in the Three Rivers Ranch sale agreed to furnish merchantable title or an owner's title policy.

Title was not disputed as to the North Park Ranch, but the trial court found that the title to Three Rivers Ranch was not merchantable. The parties had agreed in the contract for the sale of the Three Rivers Ranch, Inc., that: "In the event title is not marketable, or title policy furnished, at the date of closing, the Purchasers may, at their option, either waive the said defect or defects, or declare this contract null and void and the $50,000.00 down payment shall be returned to the Purchasers."

Both contracts provided that in the event of a failure by the purchasers to pay the unpaid balance of the purchase price, the down payment would be forfeited and retained by the sellers as liquidated damages. At the time of the execution of the contracts, appellants

executed and delivered to Dickens and to Three Rivers Ranch, Inc., promissory notes each in the amount of $50,000 for the down payments in lieu of cash.

An examination of the title to the Three Rivers Ranch had revealed some title defects, and on the initial closing date, the parties met to close the transactions, but the purchasers did not have the money then due. The next day the parties to both transactions signed an "addendum to agreement" extending the time to close the transactions and agreed to further extend the time if need be. A second addendum was executed to again extend the closing date to November 16th, and the purchasers then executed a second note for $50,000 to Dickens, and a second note to Three Rivers Ranch for $100,000. On November 16th the parties met again to close the sale, but failed to do so. Although the sellers indicate the failure was again due to the purchasers' lack of funds, there is other evidence that the funds were available but that the purchasers were objecting because they would not get an owner's title policy. The purchasers requested the sellers to escrow all closing papers with a bank in Fort Collins, Colorado, to ultimately complete the transaction in that manner, but the sellers refused to do so and this suit was brought to recover upon the four promissory notes given by the appellants.

The trial court, as indicated above, found that the title to the Three Rivers Ranch was not merchantable, but found also that the purchasers had waived the defects. The court found that the initial down payment notes were liquidated damages, and granted judgment against the purchasers on them. The court refused to enforce the second notes given as consideration for the extensions of the agreement on the ground that they represented unenforceable penalties. The trial court's findings are supported by the evidence.

■ On the question of waiver of title defects, appellants contend that any waiver must be in writing; otherwise it would be an oral modification of the contract for the sale of land contrary to the statute of frauds. We cannot agree as the contract expressly provided for an election on the part of the purchasers either to waive the defects or rescind the contract. Thus the waiver here found was not a modification of the written contract, but rather the selection of an alternative expressly provided for. It is thus part of the performance of the agreement.

■ The appellant-purchasers also assert that there was no waiver for the reason that they had not given their attorney authority to modify the contract. The trial court found, and its finding is supported by the record, that the attorney was hired to close the sale and all matters relevant thereto; that he acted within the scope of his authority for the purchasers, and that he knew the nature of the defects, and waived them.

Finally on the waiver issue, the purchasers contend that there is no evidence to support a finding that they waived the title defects. They contend that instead they made sufficient demands at the time they executed the addendum to the original instrument for a title policy to be provided at the date of closing. This position is not supported by the record nor is it supported by the case of Mitchell v. Evans, 150 Colo. 568, 375 P.2d 101, on which appellants rely. The Colorado court held in the cited case that the purchaser did not lose his right of rescission. The court found that the purchaser upon discovering the defect had a right to insist upon removal of the defect or to accept title, but he had no chance to make such an election since the sellers had served notice of forfeiture which prevented the purchaser from exercising his election and forced the rescission. This is not however authority for appellants' position here where the purchasers had a freedom of choice and the contract expressly provided for the alternatives. The case at bar is thus significantly different from the Mitchell case and it is not controlling. The record shows that prior to the closing date arrangements

were discussed to cure the defects and to permit an unqualified mortgagee title policy to be available to the lending agency under an arrangement whereby $1,000 of the purchase price was to be withheld. At the initial closing date the purchasers did not have the necessary funds available; however, it does not appear that the purchasers then made any serious protests as to the title, but instead they gave additional consideration to extend the agreement and acknowledged in the extension agreement:

"Whereas the undersigned have heretofore executed an agreement for Purchase and Sale of property on the 10th day of July, 1964, wherein the said transaction was to be closed on September 10, 1964; and Whereas the Purchasers are unable to complete said transaction in compliance therewith; * * *."

■ Thus the purchasers not only failed to object to the defective title at the initial closing date, but also by executing an extension of the contract recited their inability to perform and not the sellers' failure to tender marketable title. These acts constituted a waiver of the defects in the title as the trial court found. See Newhouser v. Sancetta, 157 Colo. 353, 402 P.2d 613.

■ Appellant-purchasers next urge that the promissory notes executed as down payments are unenforceable since they represent penalties. Under Colorado law, which governs this issue, before an agreement may be enforced for the retention of a stipulated sum as liquidated damages it must appear that the damages to be anticipated were uncertain in amount or difficult to be proved; that the parties intended to liquidate them in advance, and that the amount stated is a reasonable one not greatly disproportionate to the presumable loss or injury. The Colorado Supreme Court expressly so held in Perino v. Jarvis, 135 Colo. 393, 312 P.2d 108, and there discussed the earlier Colorado case of Thach v. Durham, 120 Colo. 253, 208 P.2d 1159, 11 A.L.R.2d 690. This is the rule followed in most jurisdictions. Whitlock & Associates, Inc. v. Aaron, 383 F.2d 72 (10th Cir.); Corbin, Contracts, §§ 1002, 1064, 1129.

The record contains direct testimony which is adequate to establish the element of uncertainty, and the difficulty in ascertaining damages. The trial court found this element was established.

The parties intended to liquidate the damages in advance by the contractual provision that the down payment or earnest money, in event of the purchasers' breach, " * * * shall constitute liquidated and full damages * * *" and " * * * may be retained * * * as full satisfaction and liquidation of all damages. * * *." The trial court found that the sums represented by the down payment notes were agreed upon by the parties as a " * * * reasonable forecast of just compensation" for damages.

■ As to the point that the amount stated shall be reasonable and not greatly disproportionate to the loss, the trial court found that the second notes ($50,000 and $100,000) executed when the contract was extended " * * * were out of proportion to a reasonable estimate of probable actual damages" and were "penal in nature." The court refused to enforce the second notes. The initial down payment notes were each in the amount of $50,000 although the sales prices of the two ranches were different. As to these notes, the trial court found them to be " * * * a reasonable forecast of damages * * * and that by reason thereof * * * were valid * * *." This finding by the court has support in the record. The sellers testified, although in somewhat vague terms, as to the loss incurred including the possible loss of another sale. Although we might not have reached the same result as did the trial court on the facts, we cannot say that it was clearly erroneous.

Thus the requirements set down under the above cited Colorado cases were met, and under Chisholm v. Reitler, 143 Colo.

288, 352 P.2d 794 (Colo.), the amount sought to be retained by the sellers is not a penalty. The Colorado court there also said: "One who asserts that liquidated damages are penal must prove that fact." We therefore hold that the appellants cannot prevail on this point in their appeal.

The appellants urge also that the trial court erroneously excluded parol evidence as to the intention of the parties. The record shows that the appellants during the trial sought on several occasions to introduce evidence showing the intention of the parties as to the down payments which was excluded by the trial court. Appellants urge and cite authority stating that the subject matter and surrounding circumstances should be examined.

██ The trial court found there was no ambiguity in the provisions of the two contracts and looked to the agreement itself. The trial court permitted evidence to show "what the facts and circumstances of the parties were, but not what the conversations were that preceded the making of the contract." Thus the court permitted evidence on the penalty versus damages issue except the conversations as to why notes were used, and discussions whether the down payment represented compensation for damages or was to be a "forfeiture." The attorney for the appellants stated on one occasion that his offer of proof related to events before the execution of the contract " * * * to prove whether or not liquidated damages is a penalty or a true liquidated damage provision and therefore enforcible. The parties have to testify as to the discussions at that time." The trial court refused on the ground that the appellants sought to vary the terms of the contracts. The trial court properly applied the parol evidence rule to exclude the evidence offered. The opportunity was given to develop the facts relative to the several elements of liquidated damages, and evidence was excluded which sought to vary the wording of the contract which was not ambiguous. The authorities cited by appellants referring to evidence of the "surround-ings," the "subject matter," and similar phrases do not in fact apply a different parol evidence rule.

The trial court's findings and conclusions are sufficiently supported by the record to withstand appellants' challenge on appeal.

Affirmed.