**ROCKWOOD & CO., a Delaware corporation, Appellee,**

v.

**Robert W. ADAMS and Mayflower Towers, Inc., a Colorado corporation, Appellants.**

**No. 73-1186.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 14, 1973.

Decided Sept. 25, 1973.

Rehearing Denied Oct. 26, 1973.

Richard L. Schrepferman, Denver, Colo. (R. W. Sullivan, Holme Roberts & Owen, and Alan L. Talesnick, Denver, Colo., with him on the brief), for appellants.

Earl Wylder, Denver, Colo. (Jacob H. Chisen, and Frickey, Cairns & Wylder, P. C., Denver, Colo., with him on the brief), for appellee.

Before HILL and SETH, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

SETH, Circuit Judge.

This is a diversity action for damages based on a contract between the defendants and the predecessor of the plaintiff. The trial court found for the plaintiff and awarded damages against both defendants. The defendants have appealed.

---

* Of the Eastern District of Michigan, sitting by designation.

The basic issue is whether or not the contract provides for liquidated damages. The trial court held that it did not and thus awarded money damages in the usual way.

In view of the disposition which we make of this appeal, it is not necessary to discuss at any length the terms of the contract in issue. The parties and the trial court are certainly familiar with it. It is sufficient to say that the issue here resolves around paragraph (7) thereof. By this paragraph defendant Adams deposited with an escrow agent shares of stock in a corporation not connected with the subject of the contract. In this paragraph this deposit of "additional shares" was referred to both as "collateral security" and as "liquidated damages."

The defendant Adams defaulted under the terms of the contract, and this brought into play another provision relating to his promissory note deposited in escrow, and the deposit of stock under paragraph (7). There is no dispute as to the note, but there is as to whether the shares of stock deposited were collateral or liquidated damages. If the latter, of course, plaintiff's recovery is thereby limited; if not, the trial court was correct in treating damages as under the usual contract standards.

■ The general purpose and wording of the entire agreement and the escrow agreement must be considered. This we have done, and we must reach the conclusion that the contract provisions relating to the "additional shares" dictate their use as liquidated damages.

■■ We are in agreement with the trial court that the provisions of paragraph (7) of the "Memorandum of Agreement" are unclear. The construction of a written instrument is a question of law, Jaeco Pump Co. v. Inject-O-Meter Mfg. Co., 467 F.2d 317 (10th Cir.); Brannan v. Republic Ins. Co., 495 P.2d 1144 (Colo.App.), and the findings and conclusions of the trial court in such circumstances are not binding upon the appellate court. A possible exception is when reliance is placed on extrinsic testimony or evidence to ascertain the meaning of the terms of the document. United States v. Continental Oil Co., 364 F.2d 516 (10th Cir.). In the case before us the only "extrinsic" testimony before the trial court was that of Mr. Adams who testified that the parties' intention in including the provisions of paragraph (7) in their agreement was to provide for liquidated damages in the event of his default. The only other evidence relating to the agreement itself before the trial court was the Escrow Instructions given by the parties to the bank in conjunction with and in furtherance of the principal agreement embodied in the "Memorandum of Agreement." The Escrow Instructions as a document was really part of the basic agreement, especially as related to the exercise of options and as to defaults. It is obvious that the trial court did not give great weight to Adams' testimony in holding that the words "collateral security" and "liquidated damages" in paragraph (7) were inconsistent, and that the provision was one for security rather than for liquidated damages. Thus the only evidence relating to the trial court's judgment appears to be documentary, and we are therefore not bound by any of the trial court's "findings," if indeed there were any, but are free to draw our own legal conclusions from the evidence before us. British American Assur. Co. v. Bowen, 134 F.2d 256 (10th Cir.).

■ A consideration of the entire "agreement" by which the management contract was terminated leads us to the conclusion that the parties agreed that in the event of a breach by Adams, resort would be had only to the shares of stock placed in escrow. The shares were also used instead of money as a device to provide consideration for the termination of the management contract which ordinarily would have been done in dollars. Hotel Equities Corporation agreed to speculate on the market price of the shares, and also to accept delivery of them from the escrow agent if Adams

did not perform. The shares were to be so delivered, title would pass, and no provision was made, as would be expected if they were collateral, for a subsequent sale of the shares and directions as to the application of proceeds. The bare delivery with nothing more is a good indication that resort would be had only to the shares. The directed handling of the promissory note provides a similar indication.

In this connection it should be observed that in paragraph (3) of the contract, there are similar provisions for delivery of unpurchased "option stock" to Hotel Equities in the event of default by Adams. Here there is no mention of "collateral" or "liquidated damages," and again resort is had to the stock on default by its bare delivery to the other party. Again no directions are given as to sale or application or division of the proceeds.

The contract thus contains several express or "built-in" provisions for a remedy in the event of Adams' default which are all consistent with each other. These, considering the entire agreement, must be taken to be the exclusive method agreed upon to provide for such an eventuality. The parties sought to create this remedy, and it should be followed. The great decline in the price of the stock makes the solution now appear inadequate and unfair, but it was what was bargained for. The parties chose to speculate on the market price of the shares, and this is the result.

It would not seem to add to the solution of the problem to characterize the remedy chosen by the parties as "liquidated damages." However, if it is so described, the technical requirements for such under Colorado law appear to have been met.

For an agreement to be enforced for the retention of a specific sum as liquidated damages in Colorado, three elements must be present: (1) the damages to be anticipated were, at the time of contracting, uncertain in amount or difficult to be proved; (2) the parties intended to liquidate them in advance; and (3) the amount stated is a reasonable one not greatly disproportionate to the presumable loss or injury. Jones v. Dickens, 394 F.2d 233 (10th Cir.); Perino v. Jarvis, 135 Colo. 393, 312 P.2d 108.

The first element, uncertainty of amount or difficulty of proof, is satisfied in this case. The entire transaction centered around the price of a certain stock, fluctuations were contemplated, and options were so devised. As hindsight has shown, the stock fluctuated even beyond the parties' wildest expectations from a price of approximately $30.00 per share at the time the "Memorandum of Agreement" was entered into to approximately $6.00 per share by September 1970, with a price of approximately $25.00 per share in the period from September 1968 to September 1969. It is therefore obvious that the "measure of damages," if that is what it was, at the time the agreement was executed depended on both the price of the stock at the time the parties exercised any of their choices under the agreement, and the exact choice which the parties in fact took. Each of these two factors interacted to make the anticipated damages uncertain in amount and difficult of proof. That the parties intended to liquidate the damages appears from the documents before us.

While it is possible to construe "collateral security" as also meaning "liquidated damages" and being encompassed in the latter term, it is not possible to construe "liquidated damages" as being encompassed in "collateral security."

The judgment of the trial court is reversed and the case is remanded for further proceedings.