In re 268 LIMITED, a Nevada limited partnership, Debtor.

JOSEPH F. SANSON INVESTMENT CO., Appellant,

v.

268 LIMITED and Trustee in Bankruptcy, Appellee.

BAP No. NV 87–1500–MeMoAs.

Bankruptcy No. S–82–01071.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 22, 1988.

Decided April 5, 1988.

James R. Shea, Wiener, Waldman, Gordon & Silver, Las Vegas, Nev., for appellant.

Joshua M. Landish, Las Vegas, Nev., for appellee.

## OPINION

Appeal from the United States Bankruptcy Court for the District of Nevada.

Before MEYERS, MOOREMAN and ASHLAND, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge:

A secured creditor appeals a judgment of the bankruptcy court denying as unreasonable a request for attorney's fees. *In re 268 Limited,* 75 B.R. 37 (Bkrtcy.D.Nev. 1987). The Ninth Circuit Court of Appeals had previously determined that a portion of the requested fee was reasonable and allowable as a secured claim but remanded to allow the creditor to seek the balance of its claim as an unsecured claim under Bankruptcy Code § 502. *In the Matter of 268 Limited (Sanson Investment Co. v. 268 Limited),* 789 F.2d 674 (9th Cir.1986). The circuit court specifically expressed no opinion on the enforceability under state law of the attorney's fee provision in the deed of trust. We turn to an analysis of Nevada state law and affirm.

## FACTS

Appellant-creditor Sanson Investment Co., sold the Shenandoah Square Apartments to appellee-debtor 268 Limited, a limited partnership formed to operate the apartment complex. Sanson retained a security interest in the property, which was written into a trust deed. The trust deed encorporated a covenant contained in Nevada Revised Statutes § 107.030(7), which provided an attorney fee stipulation allowing, at default, for 5% of the balance remaining due on the mortgage to be paid to Sanson by 268 Limited as attorney's fees.

Subsequently, the general partner of 268 Limited filed an involuntary petition in bankruptcy under Chapter 11, the secured obligation was defaulted on, and the apartment complex was sold. The sale yielded $1,000,000 in excess of the amount needed to pay the obligation. Sanson applied for $197,500 in attorney fees which is 5% of the remaining balance. The bankruptcy court found $197,500 to be an unreasonable amount and awarded $20,000 in fees pursuant to § 506(b) of the Bankruptcy Code.

On appeal, the Ninth Circuit affirmed the bankruptcy court's holding that the correct measure of attorney fee awards should be a reasonableness test. However, the Ninth Circuit remanded for a determination on whether the balance of the attorney fee claim, requested by Sanson, could be sought as an unsecured claim under Bankruptcy Code § 502. When Sanson filed an unsecured claim against the bankruptcy estate for $177,500 the debtor objected. The bankruptcy court on remand found the $177,500 not recoverable because it is an unreasonable amount. Sanson appealed.

## ISSUE

1. Whether a stated percentage in an attorney fee provision contained in a trust deed covenant is subject to review for reasonableness pursuant to Nevada Revised Statutes § 107.030(7).

2. Whether the net difference between a reasonable amount and stipulated percentage can be sought as an unsecured claim under Bankruptcy Code § 502.

## DISCUSSION

There are two standards of review in this case. Questions of statutory interpretation are reviewed *de novo. Sierra Switchboard Co. v. Westinghouse Electric Corp.,* 789 F.2 705, 707 (9th Cir.1986). The part of this case involving the interpretation of Nevada Revised Statutes § 107.030(7) will be reviewed under this standard. However a determination of amount of attorney's fees lies within the sound discretion of the district court and "will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law." *In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985). Hence, the actual award of fees will not be amended absent an abuse of discretion.

1. *Whether a stated percentage in an attorney fee provision contained in a trust deed covenant is subject to review for reasonableness pursuant to Nevada Revised Statutes § 107.030(7).*

■ The issue whether reasonableness or a stated percentage will control, arises due to the ambiguous wording of the Nevada Revised Statutes § 107.030(7). The statute first allows for recovery of "reasonable expenses of the trust" but then goes on to allow a stated percentage to be recoverable.

Sanson contends that a statutory interpretation that finds that reasonableness is the correct measure, leaves the stated percentage clause as surplusage. Sanson reasons that since legislatures do not draft useless statutes ... it follows that ... the stated percentage must control.

Sanson's reasoning is faulty in several respects. The two attorney fee award measures are not necessarily mutually exclusive. There are no cases directly interpreting this statute. However, analysis of pre-section 107.030(7) law, the actual wording of § 107.030(7), and the policies surrounding the statute, show that reasonableness is a modifier to the stated percentage in order to control the fee award.

Long before the present § 107.030(7) was drafted, Nevada had stated its position on parties contracting for attorney fee compensation. The Supreme Court in Nevada considered unreasonable attorney fee contracts to be at war with the best interests of society. *Cox v. Smith,* 1 Nev. 161 (1865). The Nevada Supreme Court took a firm stance the next year when declaring, "in all cases where attorney's fees are provided for in an instrument of this [mortgage] character, only a reasonable sum should be allowed. The entire sum should not be allowed to parties where it would be an exorbitant or unreasonable fee." *McLane v. Abrams,* 2 Nev. 1999 (1866). *McLane* indicates that the stipulated percentage should be used as a "cap" on the fee award which in any case will not exceed a reasonable amount.

However, if that percentage is unreasonably related to the services provided, the court will adjust it accordingly. *Cox* and *McLane* are the only Nevada cases addressing this issue, and although written 100 years before the present § 107.030(7), the cases are valid. The cases are reconcilable with the plain language of the statute and the Nevada legislature did not overrule their precedential value.

The plain language of the statute does not support Sanson's interpretation. The relevant part of § 107.030(7) reads,

"[the trustee] ... shall apply the proceeds of the sale thereof in payment, firstly, of the expenses of such sale, together with the reasonable expenses of the trust, including counsel fees, in an amount equal to ____ percentage of the amount secured thereby and remaining unpaid ..."

Nevada Revised Statutes § 107.030(7).

The legislature has explicitly included counsel fees as reasonable expenses of the trust. Reasonableness thus modifies the entire clause including the stipulated percentage. Why then, as Sanson contends, did the legislature bother to include an extra 14 words and a blank space if they are subject to the previous modifier? There are only two interpretations that give the clause its own validity.

First, the clause has meaning if the relevant time to consider reasonableness is at the time of contract. Thus if 5% were a reasonable amount at the signing of the deed, the clause would be enforceable. But if the percentage is unreasonable it is subject to adjustment. There are several problems with this interpretation. First, *Cox* and *McLane* address reasonable fees not reasonable percentages. Hence, this interpretation would go against precedent. Second, reasonableness of the percentage at the time of contract does not necessitate court intervention. The relative bargaining powers of the parties will assure a rational fee is set at the time of contracting. Equity supplements the law, but it will not do a vain act. *Stock Growers and Ranchers Bank v. Milisich*, 48 Nev. 373, 233 P. 41 (1925). Checking the validity of a percentage is meaningless without the context of a default. Therefore, a court of equity has no jurisdiction to check the percentage at the time of contract.

The alternate interpretation has its genesis in the policy that courts will never award an unreasonable fee. Here, the bargained for percentage stands for a maximum that courts will award and the percentage bargained for can be relied upon as the maximum compensation that a defaulting buyer must pay. This "cap" interpretation accommodates sanctity of contract, public policy, the rules of statutory construction, and equity. If the stipulated percentage is reasonably related to the actual services provided then the percentage will control. If, however, the percentage is oppressive or exorbitant the court will adjust it equitably. This is what the bankruptcy court has done in this case. The actual time billed was $13,000. The contract called for $197,500 in fees. The first trial court awarded $20,000.

While the allowance of reasonable attorneys' fee is always a matter of delicacy—either when billed by the attorneys themselves or when fixed by the courts—the object always, of course, is to allow fair and just compensation for the services rendered, considering the time and skill employed, the experience brought to bear, and the results achieved.

*Courtesy Chevrolet v. Tennessee Walking Horse B & E.A.*, 393 F.2d 75 (9th Cir.1968). The bankruptcy court found an equitable balance between actual work done and a contract that called for unreasonably high fees. There has not been an abuse of discretion by the trial court. The circuit court found $20,000 to be generous. *In the Matter of 268 Limited*, 789 F.2d at 677.

This interpretation also agrees with the policy of avoiding penalty clauses in contracts. In an action for breach of contract, where each party seeks to enforce against the other a liquidated damages provision in the contract penalty, it might be assumed that the court will not attempt to relieve either party from the provision. However, the true function of the court is to do justice between the parties, and the court does this by restricting both to the actual damages. *Golden v. Mckim*, 37 Nev. 205, 141 P. 676 (1914), *citing*, *Eaton v. J.H., Inc.*, 94 Nev. 446, at 450, 581 P.2d 14 (1978). The "___%" –clause of § 107.030(7) acts as a liquidated damages provision. It allows for a fixed sum upon default. However, unless modified by reasonableness, the provision becomes a penalty clause. A liquidated damages provision is presumed to be a penalty clause if the damages are easily ascertainable and the stipulated amount is greatly disproportionate to the amount of damage. *Morris v. McLoy*, 7 Nev. 399 (1872). Here, the loss to Sanson is easily ascertainable, $13,000 in fees, and the stipulated amount is greatly disproportionate. Unless modified by reasonableness, the "___"% –clause operates as a penalty clause, and the courts should not enforce it.

This interpretation of § 107.030(7) is also compatible with Bankruptcy Code § 506(b). Section 506(b) must be "considered in conjunction with, and as a restriction on, the equitable power of the bankruptcy courts to determine how estate assets are to be distributed." *In re Anderson*, 69 B.R. 105, 106, 108 (9th Cir.BAP 1986), *aff'd*, 833 F.2d 834 (9th Cir.1987). Section 506(b) allows recovery of only reasonable fees.

Furthermore, the purpose of the fee award should operate not as a "bargaining

chip" but as reimbursement to the vendor for legal expenses incurred in the event of default. Public policy disfavors this kind of leverage by the creditor and its attorney because it acts as a penalty upon the debtor and is not in exchange for any valuable service. A compensatory damage of reasonable attorney fees will fulfill the creditor's needs when realizing upon a default. The court will not enforce an unreasonable fee provision. Reasonable fees accomplish compensation.

2. *Whether the net difference between a reasonable amount and stipulated percentage can be sought as an unsecured claim under Bankruptcy Code § 502.*

We conclude that Nevada law invalidates any amount over the reasonable amount. As such, Sanson cannot recover the balance of the fees sought as an unsecured claim under § 502 of the Bankruptcy Code. Sanson's claim is excepted from § 502 by § 502(b)(1).

> The import of § 502(b)(1) is clear. To the extent that applicable law, including state law, would afford the debtor a defense to a claim of creditor, in whole or in part, absent bankruptcy, such defense is available to the trustee in objecting to the claim to the end that it would be disallowed and disentitled, therefore, to share in a distribution of debtor's assets.

3 Collier on Bankruptcy ¶ 502–25 (15th ed. 1986). *See also, In re Johnson,* 756 F.2d 738, 741 (9th Cir.1985).

268 Limited has an absolute defense to the balance of Sanson's claim. The statute that Sanson had incorporated into the deed of trust, Nevada Revised Statutes § 107.030(7), limits the recovery to reasonable attorney fees. Reasonable fees were awarded at $20,000. The balance of the claim is disallowed under Nevada law and under the Bankruptcy Code as well.

### CONCLUSION

For all the foregoing reasons, Nevada Revised Statutes § 107.030(7) should be read as allowing for a reasonable attorney fee while using the stipulated percentage as a maximum amount of possible recovery. Any net remainder is not allowed as an unsecured claim. Here, Sanson has received a reasonable fee taking into account the contract percentage. We affirm the bankruptcy court.

MEYERS, Bankruptcy Judge, concurring:

The provision in the deed of trust adopting Nevada Revised Statute Section 107.-030(7) constitutes a liquidated damages clause for reasonable expenses, including attorney fees, incurred during a trustee's sale of property in the event of a default. I CONCUR with the majority because Nevada law, unlike the law in a majority of jurisdictions, requires the stipulated liquidated damages be reasonable in light of the actual damages incurred.

The validity of a contract provision prescribing liquidated damages depends upon state law. *In re United Merchants & Mfrs., Inc.,* 674 F.2d 134, 137, 141 (2d Cir. 1982). A liquidated damages clause is *prima facie* valid unless the challenging party proves its application amounts to an unenforceable penalty. *Haromy v. Sawyer,* 654 P.2d 1022, 1023 (Nev.1982); *Silver Dollar Club v. The Cosgriff Neon Co., Inc.,* 389 P.2d 923, 925 (Nev.1964). A penalty is a sum disproportionate to anticipated damages designed to enforce performance of the contract by compulsion. *United Order of American Bricklayers and Stone Masons Union No. 21 v. Thorleif & Son, Inc.,* 519 F.2d 331, 333 (7th Cir.1975); *In re Plywood Co. of Pennsylvania,* 425 F.2d 151, 155 (3d Cir.1970).

Courts have employed various criteria to differentiate between a provision providing for liquidated damages and one imposing a penalty. A stipulated sum constitutes valid liquidated damages if it is a reasonable forecast of just compensation for an injury resulting from a future breach that is impossible or very difficult to accurately estimate. *Southwest Engineering Co. v. United States,* 341 F.2d 998, 1001 (8th Cir. 1965); *Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co.,* 649 F.Supp. 1310, 1313–16 (Nev.1986).

The critical inquiry is whether the amount of $197,500 representing five percent of the remaining balance stipulated as liquidated damages for costs and attorney fees is so unreasonable as to comprise an unenforceable penalty. The general rule recognized by a majority of jurisdictions is the reasonableness of the amount or percentage selected as liquidated damages will depend upon the estimation at the time the contract was executed, rather than at the time of breach or some other subsequent event, and that the amount of actual damages incurred is irrelevant. *Gaines v. Jones,* 486 F.2d 39, 44–46 (5th Cir.1973); *In re United Merchants & Mfrs., Inc., supra,* 674 F.2d at 142; *United Order of American Bricklayers and Stone Masons Union No. 21 v. Thorleif & Son, Inc., supra,* 519 F.2d at 333; *Rockwood & Co. v. Adams,* 486 F.2d 110, 113 (10th Cir.1973); E. Farnsworth, Contracts 12.18, p. 900 (1982); C. McCormick, Damages 150 (1935). The Eight Circuit Court of Appeals has noted that:

> "cases holding that the situation existing at the time of the contract is controlling in determining the reasonableness of liquidated damages are based upon sound reasoning and represent the weight of authority.... If in the course of subsequent developments, damages prove to be greater than those stipulated, the party entitled to damages is bound by the liquidated agreement."

*Southwest Engineering Co., supra,* 341 F.2d at 1003; *see also Gaines v. Jones, supra,* 486 F.2d at 44–46; C. McCormick, Damages 150 (1935).

Reviewing Nevada Statute Section 107.-030(7) on its face could lead to the interpretation that the Nevada legislature intended the statute to be in accord with this line of authority. However, as observed in *Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co., supra,* 649 F.Supp. at 1312–16, Nevada courts permit a party to challenge a liquidated damage provision as a penalty "by showing the agreed liquidated. damages to be disproportionate to the *actual* damages suffered by the lender." 649 F.Supp. at 1316 (emphasis added); *see also In re Bryant,* 39 B.R. 313, 323 (Nev. 1984). In *Silver Dollar Club v. The Cosgriff Neon Co., Inc.,* the Nevada Supreme Court stated: "If Appellant had introduced evidence showing that the *actual* damages were considerably smaller than the amount stipulated, this could be regarded as an indication that the amount named was intended as a penalty ..." 389 P.2d at 925 (emphasis added). In *Haromy v. Sawyer,* 654 P.2d 1022, 1023 (Nev.1982), it ruled "In order to prove a liquidated damage clause constitutes a penalty, the challenging party must persuade the court the` liquidated damages are disproportionate to the *actual* damages sustained by the injured party." 654 P.2d at 1023 (emphasis added). The District Court emphasized this point by defining actual as meaning "real", "substantial" and "existing presently in fact" and stating: "In short, actual means actual. It means real damages suffered." *Hubbard Business Plaza, supra,* 649 F.Supp. at 1316.

Nevada law is an exception to the general rule requiring reasonableness of an amount stipulated as liquidated damages to be evaluated at the time the contract is executed regardless of the amount of the actual damages. Recognizing this divergence, the district court in *Hubbard Business Plaza* stressed:

> "It is the obligation of this Court to apply Nevada law as it is, not as it ought to be ... This Court is not free to predict possible changes in the Nevada law ... Nor is the Court free to engraft upon prior state decisions exceptions or modifications which have not been adopted by the state courts."

649 F.Supp. at 1310.

Under the contract provision designating five percent of the remaining balance as liquidated damages, the sum here would be $197,500. However, the actual amount of attorney's fees incurred in foreclosing the deed is only $13,000, with $20,000 having been awarded as a reasonable amount by the bankruptcy court. The contract amount stands at more than fifteen times the amount actually billed and nearly ten times the amount deemed reasonable for purposes of Section 506(b) of the Bankrupt-

cy Code. Comparing the actual damages to the amount resulting from the stipulated percent, the bankruptcy court found the amount under the contract "clearly beyond the bounds of reasonableness" and denied Sanson's claim to recover the additional $177,500 in fees.

For these reasons, I concur in the judgment of the majority affirming the Bankruptcy Court's denial of Sanson's unsecured claim.